PAUL J. MACHADO & another[1] *vs.* COMMITTEE FOR PUBLIC
COUNSEL SERVICES & others.[2]

No. 94-P-718.

Bristol. April 6, 1995. - August 24, 1995.

Present: KASS, SMITH, & LAURENCE, JJ.

*Contract*, Parties, Third party beneficiary. *Commonwealth*, Claim against,
Contracts, Financial matters. *General Court. Statute*, Appropriation of
money. *Interest. Attorney at Law*, Compensation.

Attorneys who provided legal services to indigent criminal defendants, pur-
suant to a contractual arrangement authorized under G. L. c. 211D,
between Committee for Public Counsel Services (CPCS) and a local
bar association advocates corporation, are intended beneficiaries of such
a contract and may maintain an action against CPCS with respect to
the contractual provisions that affect the attorneys. [180-181]

Any right of attorneys who provided services to indigent criminal defend-
ants pursuant to G. L. c. 211D, to payment for their services within the
statutorily prescribed thirty days was expressly subject to appropriation
of the necessary funds by the Legislature [181]; moreover, there was no
contractual right of the attorneys to enforce timely payments in the
absence of such a provision in the statute. [181-182]

Attorneys who provided professional services to indigent criminal defend-
ants pursuant to G. L. c. 211D, and whose payments for such services
were delayed, were not entitled to interest on the late payments where
G. L. c. 211D made no such provision and where an attorney was not a
"commercial vendor" for purposes of G. L. c. 29, § 29C. [182-183]

There was no merit to attorneys' claims for payment for services on a the-
ory of quantum meruit, where the attorneys had been paid in full on
the basis of a rate that they had agreed to. [183]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 24, 1993.

[1]Joseph Rosa.

[2]William Leahy, in his capacity as Chief Counsel of the Committee for
Public Counsel Services. The complaint also named as a defendant,
William F. Weld, Governor of the Commonwealth, but the plaintiffs do
not press the appeal against the Governor.

The case was heard by *John J. O'Brien*, J., on a motion for summary judgment.

*Paul J. Machado*, pro se, & another.

*Robert Patten*, Assistant Attorney General, for the defendants.

KASS, J. Stripped to its essentials, the grievance of the plaintiffs is that the Committee for Public Counsel Services (CPCS) has not paid them promptly for legal services performed in behalf of indigent persons accused of crime. A judge of the Superior Court allowed a defense motion for summary judgment, largely on the ground that the obligation to compensate private counsel, or any interest for late payment, was subject to legislative appropriation. We affirm.

Paul J. Machado and Joseph Rosa are lawyers who have accepted appointments as "private counsel" in criminal cases under G. L. c. 211D, § 6(*b*).[3] "All invoices" for private services "shall be processed for payment within thirty days of receipt by the chief counsel [of CPCS]." G. L. c. 211D, § 12, as inserted by St. 1983, c. 673, § 2. Under the immediately preceding section of c. 211D, CPCS "shall establish rates of compensation payable, *subject to appropriation*, to all counsel who are appointed or assigned to represent indigents within the private counsel division" (emphasis supplied). G. L. c. 211D, § 11, as inserted by St. 1983, c. 673, § 2. To their amended complaint, Machado and Rosa have appended lists of pending bills. There are 102 bills from Machado, all but thirteen of them having been received by

---

[3]Under § 6(*b*), CPCS is required to "[e]stablish, supervise, and maintain a system of private counsel" for the purpose of providing counsel to defend indigent persons accused of crimes. G. L. c. 211D, § 6(*b*), as inserted by St. 1983, c. 673, § 2. That system, called the "private counsel division," runs in tandem with full time CPCS lawyers in the "public counsel division." CPCS, under the statute, is to "enter into contractual agreements with any state, county or local bar association or voluntary charitable group, corporation or association, including bar advocate groups." *Id.*, as amended by St. 1990, c. 150, § 331. Contractual agreements for private counsel run between CPCS and such groups, rather than between CPCS and the individual lawyers. *Ibid.* Machado and Rosa have signed a contract annually with Bristol County Bar Advocates, Inc., in order to be eligible to accept appointment as private counsel.

CPCS in July, 1993. There are seventy-six bills from Rosa, all of them received on August 4, 1993. According to an affidavit from Gina Dembowski, the director of the private attorney payment department of CPCS, 100 of Machado's bills were processed at the approved rates on or before September 29, 1993, two of them on or before October 12, 1993. Rosa's bills were processed by December 17, 1993.

Dembowski's unrebutted affidavit went on to explain that she and her staff review bills from counsel and, with the aid of a computer program, prepare payment vouchers that CPCS transmits electronically to the Comptroller of the Commonwealth. That officer puts the voucher information on a warrant to be approved by the Governor's Council. When the Governor's Council has authorized payment, the treasurer's office issues a check. The comptroller's office, the Dembowski affidavit also stated, does not accept transfer of payment vouchers until the Legislature has appropriated funds for private counsel services. We have elaborated on the processing and payment procedure because it shows that there is a sequence of payment steps, after CPCS has finished processing a bill, not within CPCS's control, and that even CPCS's processing is subject to the limitation of appropriated funds, i.e., the comptroller will bounce vouchers for which there are not funds. Notwithstanding the multi-step procedure, Machado's and Rosa's bills had been paid by the time the summary judgment motion was argued in March, 1994.[4] Although their bills were paid, the cause of the plaintiffs is not moot because its essence is that they were not timely paid within the meaning of G. L. c. 211D.

1. *Whether appointed counsel has contractual relation with CPCS.* As touched on above, under G. L. c. 211D, § 6(*b*), the contracting parties for private counsel services are CPCS and bar groups, not CPCS and the individual lawyers.

---

[4]That Machado and Rosa had been fully paid by the time the summary judgment was argued was asserted as a fact on behalf of the defendants in their memorandum in support of summary judgment. In their brief on appeal, Machado and Rosa concede payment by the time that the defendants had filed responsive pleadings.

CPCS establishes standards, G. L. c. 211D, § 9; monitors compliance with those standards, G. L. c. 211D, § 10; establishes compensation rates, G. L. c. 211D, § 11; and monitors billing, G. L. c. 211D, § 12. The contracts that Machado and Rosa signed are with the Bristol County Bar Advocates, Inc. Those lawyers who provide services, however, are the intended beneficiaries of the contractual arrangements between CPCS and the bar groups. As such, they may maintain an action against CPCS arising out of so much of the contract between a bar group and CPCS as bears on the rights of the participating lawyers. See *St. Charles* v. *Kender*, 38 Mass. App. Ct. 155, 157 (1995).

2. *Right to processing within thirty days.* Although the processing of the plaintiffs' bills by CPCS was reasonably prompt (within the 120-day range), it was, nonetheless, not accomplished within the statutorily prescribed thirty days. See G. L. c. 211D, § 12. While that may be a fault, it is not one that CPCS must answer for to disappointed counsel. The first obstacle that Machado and Rosa fail to surmount is that payment of compensation is subject to appropriation. G. L. c. 211D, § 11. The affidavit of CPCS's director of private attorney payment states that she cannot transmit vouchers to the State comptroller until appropriated funds are available. Machado and Rosa have made no showing that appropriated funds were available. The Dembowski affidavit, by making a point of the appropriation condition for forwarding vouchers, requires the inference that appropriation was not timely made. That a statute provides for payment does not amount to an appropriation and does not create a contractual obligation. *Milton* v. *Commonwealth*, 416 Mass. 471, 473 (1993).

A second obstacle is that a direction in a statute that a governmental body or official shall do a certain thing (e.g., process bills within thirty days), does not necessarily — in the absence of a provision therefor — lay the basis for contract damages. Compare G. L. c. 29, § 29C, a provision discussed in the next section of this opinion, which provides for interest on late payments by the State to a commercial vendor. As to statutory directions to public officers, designed to

achieve timeliness, uniform practice, and system in governmental agencies, a failure to comply generally does not result in the creation of a private right. See *Boston v. Barry*, 315 Mass. 572, 577-578 (1944); *Cullen v. Building Inspector of N. Attleborough*, 353 Mass. 671, 679 (1968); *Zuckerman v. Zoning Bd. of Appeals of Greenfield*, 394 Mass. 663, 665-667 (1985); *O'Kane v. Board of Appeals of Hingham*, 20 Mass. App. Ct. 162, 163 (1985). Compare *Uglietta v. City Clerk of Somerville*, 32 Mass. App. Ct. 742, 745 (1992). See also 3 Singer, Sutherland Statutory Construction § 57.14, at 37 (5th ed. 1992).

3. *Claim to interest for late payment.* Chapter 211D contains no provision for the payment of interest if payment of private counsel is delayed a particular time beyond the date of submission of a bill. The plaintiffs seek to apply G. L. c. 29, § 29C, as inserted by St. 1987, c. 611, § 3, which provides for the payment of interest at the Federal Reserve Bank of Boston discount rate on delayed payment for property or services "from a commercial vendor." Delayed payment means "the required payment date . . . under the terms of the contract," or if there is no payment date specified, "forty-five days after receipt of a properly authorized, approved and submitted invoice for the amount of payment due, unless the usual and customary time for payment is longer." *Ibid.*

Assuming, without so deciding, that payment to Machado and Rosa was, in fact, late within the meaning of § 29C,[5] that statute is not applicable to lawyers who furnish private counsel services. Lawyers are members of a learned profession, a status they are disposed to cherish, as witness the honorifics ("esquire," "my sister," or "my brother") by which they are prone to address one another. We do not read the words "commercial vendor" to include those in the learned professions. Learned professions "are characterized by the need of unusual learning, the existence of confidential

---

[5]On this record, it is altogether plausible that the plaintiffs were paid within forty-five days of their invoices being authorized and approved by the various agencies in the chain of approval.

relations, the adherence to a standard of ethics higher than that of the market place' " *McMurdo* v. *Getter*, 298 Mass. 363, 367 (1937). See also *Matter of Cohen*, 261 Mass. 484, 487-488 (1928) ("attorneys at law practice a profession; they do not conduct a trade"); *Opinion of the Justices*, 289 Mass. 611, 612-613 (1935); *Commonwealth* v. *Brown*, 302 Mass. 523, 527-529 (1939). To be sure, the opinions cited made the trade-profession distinction in the context of decisions prohibiting advertising and organization of professionals in a corporation, practices since approved and, now, commonplace. Nor ought the professional status of lawyers doom them to chronic late payment of their bills. Nevertheless, there continues to be a distinction between learned professions and commercial enterprises, not the least of which is that admission is conditioned and policed by the profession itself on standards of educational and intellectual attainment and of moral conduct. Ultimate supervision, in the case of the legal profession, is by the Supreme Judicial Court and lawyers, when sworn in as members of the bar, become officers of the court. Cf. *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 179-180 (1943). The distinction is sufficiently understood so that we shall not assume, in the absence of express statutory or regulatory language, inclusion by the Legislature of lawyers in the category of commercial vendors. We may add, parenthetically, that the plaintiffs have not at any time submitted to CPCS an invoice for late penalty interest, a step required by G. L. c. 29, § 29C, as a condition for receipt of a late interest payment.

4. *Quantum meruit claim.* As to this aspect of the plaintiffs' appeal, it is enough to say that they have been paid at the contract rate.

*Judgment affirmed.*