Kane, J.
Plaintiffs are eleven of approximately 2,500 attorneys who accept assignments from the Private Counsel Division of the Committee for Public Counsel Services (CPCS) to represent persons constitutionally entitled to counsel at the Commonwealth’s expense in criminal prosecutions and certain civil matters. Plaintiffs filed this action claiming that the compensation rates set and paid by CPCS, subject to legislative appropriation, are inadequate, leaving plaintiffs unfairly underpaid, overburdened, and less able to provide constitutionally required representation. They brought this action against William Leahy, CPCS’s Chief Counsel, Willie J. Davis, CPCS’s Chairman, William F. Galvin, the Secretary of the Commonwealth, Timothy P. Cahill, the Treasurer of the Commonwealth, and Martin J. Benison, the Comptroller of the Commonwealth.
Plaintiffs’ Second Amended Complaint contains five counts: the low compensation rates set and paid by CPCS have created a risk of denying their clients’ rights to counsel and to due process (Count I); CPCS’ failure to set fair compensation rates prior to December of 2002 and its failure to pay fair compensation rates amount to a taking of property without just compensation (Count II); CPCS’s nonpayment of the fair rates it set in December of 2002 also constitutes a taking of property without just compensation (Count III); the current compensation rates violate plaintiffs’ equal protection rights, as CPCS pays higher rates to other service providers (Count IV); and the statutory provision making CPCS compensation rates subject to legislative appropriation, G.L.c. 211D, §11, is unconstitutional (CountV). Plaintiffs seek declaratory, monetary, and equitable relief consistent with these counts.[4]
Defendants have moved to dismiss all claims against them.[5] For the reasons stated in this memorandum, I allow the motion.
BACKGROUND
General Laws c. 211D, §5, mandates CPCS to establish, supervise and maintain a system for the appointment or assignment of counsel for persons for whom a constitutional obligation exists to provide counsel. CPCS carries out its responsibilities through its two divisions, the Public Counsel Division and the Private Counsel Division. Through its Private Counsel Division, and pursuant to G.L.c. 211D, §6(b), CPCS contracts with counly-based agencies which in turn contract with plaintiffs and other attorneys (collectively referred to as bar counsel) who provide the constitutionally required legal services. Approximately 2,500 attorneys throughout the Commonwealth currently accept assignments through the Private Counsel Division of CPCS.[6] Plaintiffs, who practice law in Bristol County, are qualified to and do accept these assignments.[7] Their service to indigents and the Commonwealth, particularly in the difficult circumstances described in their complaint, are highly commendable.
CPCS is authorized and required to set rates of compensation for bar counsel. G.L.c. 211D, §11.[8] CPCS’s payment of those rates is subject to appropriation by the Legislature. Id. General Laws c. 211D, §12, nonetheless requires CPCS to “establish policies and procedures to provide fair compensation to private counsel. . .”
Apart from bar counsel, CPCS engages the services of other professionals as well as nonprofessionals. Pursuant to G.L.c. 211D, §9, CPCS has authority to establish a range of rates payable for vendors for investigative services, social services or social service referrals, and expert witnesses, “taking into consideration the rates, qualifications and history of performance; provided, however, that such ranges may be exceeded with approval of the court.” CPCS must pay its staff attorneys in the Public Defender Division a salary comparable to that of an attorney in a district attorney’s office. G.L.c. 211D, §6. In contrast to *265 plaintiffs’ compensation, nothing in the statute makes the rates for the other service providers expressly subject to legislative appropriation.
COMPLAINT
1.Compensation of Bar Counsel
Since 1996, CPCS has paid bar counsel the following rates: $30 per hour for services related to District and Juvenile Court representation; $39 per hour for legal services in the Superior Court, in the Appeals Court and in family and mental health matters and $54 per hour for murder cases. According to the complaint, these rates are lower than those paid by the Federal government ánd all but two states.
Plaintiffs distinguish between defendants’ actions before and after December of 2002. They attribute the low compensation rates paid prior to December of 2002 to defendants’ failure either to set fair rates pursuant to G.L.c. 211D, §12, or to convey adequate information to the Legislature in support of appropriating funds for fair rates. In December of 2002, CPCS set what plaintiffs describe as fair rates of compensation. Nonetheless, for reasons not disclosed, plaintiffs claim defendants have not compensated them in accordance with those fair rates “in spite of an existing appropriation.”[9] Plaintiffs further complain that the Legislature has historically underfunded the budget for assigned counsel, resulting in delayed payment of their already low compensation.
Plaintiffs assert that CPCS pays its other service providers at rates two to eight times more than plaintiffs, even though many of the other providers’ services are only reasonably necessary rather than constitutionally required. Plaintiffs fault defendants’ failure to collect and publish data to determine appropriate compensation rates for plaintiffs, and to adjust plaintiffs’ compensation rates to keep pace with inflation as they have for other CPCS service providers. Plaintiffs compare their compensation with that of “other like and unlike providers of services to the Commonwealth” who are attorneys, professionals who provide services for indigent persons, and non-professionals. They offer two examples: laborers “at prevailing wage jobs” are paid at rates similar to plaintiffs but do not incur overhead costs, and attorneys serving the Commonwealth receive higher compensation than plaintiffs, revealing a “gross disparity.” Plaintiffs claim because no rational basis or legitimate purpose justifies this disparity, it violates their right to equal protection.
2.Impacts on Bar Counsel
Plaintiffs have satisfied all training requirements and qualify for appointments or assignments of matters from the Private Counsel Division. They represent indigents in compliance with CPCS’s performance guidelines[10] and the Canons of Ethics. In order to be able to provide these services, plaintiffs must incur not only basic overhead costs, such as office space, insurance, transportation, telephone and clerical assistance, but also the costs of more advanced communication equipment and services, including faxes, on-line research capability, email accounts, cell phones, and dedicated telephone lines. These costs have and will continue to rise. According to plaintiffs, in some cases, their compensation amounts to less than their overhead costs, or their net compensation after covering such costs falls below the minimum wage rate.
3.Impacts on Clients
The low compensation rates have led to a dramatic reduction in the number of attorneys willing or financially able to accept assignments from the Private Counsel Division. According to plaintiffs, each year, approximately 400 experienced attorneys withdraw their names from the Private Counsel Division lists, while only 90 new attorneys are able to qualify to receive such assignments.
Consequently, fewer experienced attorneys are available to handle the more complex cases and to supervise and mentor less experienced attorneys. At the same time, the number of cases constitutionally requiring representation has risen, due to general population growth and changes in criminal laws. In 1996, when the current rates paid to bar counsel were established, 2,538 attorneys accepted assignments from the Private Counsel Division lists. They handled 221,187 cases that year, so that the average caseload was approximately 87 cases per attorney. In 2003, 2,400 attorneys accepted assignments, and handled 300,000 cases, with their average caseloads being 125.[11]
Plaintiffs allege that on unspecified occasions in undesignated courthouses, bar counsel is at times unavailable for indigent clients, so that courts have “drafted” attorneys to accept appointed cases, or indigents have gone unrepresented, or they are appointed counsel only after a period of prejudicial delay. These vague allegations appear to apply to indigents outside of Bristol County. In this context, plaintiffs assert that their low compensation rates have created a “severe and unacceptably high risk” that indigent persons will be denied their rights to counsel and to due process, and that, without fair compensation for bar counsel, the Massachusetts system of providing constitutionally required representation will likely soon collapse.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6) the Court accepts as true the well-pleaded factual allegations of the complaint, as well as any inferences which can be drawn therefrom in plaintiffs’ favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim *266 which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977). A complaint is not subject to dismissal if it would support relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). A complaint should not be dismissed because it asserts a novel or extreme theory of liability or improbable facts. Municipal Light Co. of Ashburnham v. Commonwealth, 34 Mass.App.Ct. 162, 166 (1993).
1. Plaintiffs’ Claims on Behalf of Others (Counts I and V)
' In Count I, plaintiffs contend that their compensation rates are so low that they have created a “severe and unacceptably high risk that indigent persons in proceedings implicating their liberty interests will be denied their rights to meaningful and effective assistance of counsel and to due process of law”[12] in violation of the constitutional and statutory mandates providing for appointment of counsel. As a result, plaintiffs warn that “there will shortly be a systemic failure to provide effective assistance to over three hundred thousand indigent clients a year.” Moreover, plaintiffs see themselves as “representing the interests of the Judicial System to preserve its core functions in spite of its own lack of voice,” and suggest that their plight may also impair the Massachusetts courts’ ability to dispense justice.
In Count V, plaintiffs assert that the “subject to appropriation” language of G.L.c. 21 ID, §11, is unconstitutional. This contention appears to be premised on the same grounds as Count I, that the legislative limit on plaintiffs’ compensation jeopardizes their clients’ rights to effective assistance of counsel and due process. The alleged harms underpinning these counts reveal their legal deficiencies.
a. Jurisdiction
Declaratoiy judgment is a vehicle for resolving actual, not hypothetical, controversies. Boston Herald, Inc. v. Superior Court Department of the Trial Court, 421 Mass. 502, 504 (1995). “Although the Act’s purpose is remedial and is to be liberally construed, G.L.c. 231 A, §9, if there is no actual controversy, then declaratory relief is not available.” Gay & Lesbian Advocates & Defenders v. Attorney General, 436 Mass. 132, 134 (2002). An actual controversy exists where there is
... a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation.
Gay & Lesbian Advocates & Defenders v. Attorney General, 436 Mass, at 134, quoting Bunker Hill Distrib., Inc. v. District Attorney for the Suffolk Dist., 376 Mass. 142, 144 (1978). Thus, in order for this Court to have jurisdiction under c. 231A, the controversy at issue must be definite and between the named parties. Alliance, AFSCME/SEIU AFL-CIO v. Commonwealth, 425 Mass. 534, 537-39 (1997).
The vague generalizations woven throughout Counts I and V do not amount to an actual, ascertainable dispute between the named defendants, nor do they constitute a real and ascertainable controversy which is mature or likely to lead immediately to ascertainable injury. First, plaintiffs’ dispute with the named defendants in this action is misdirected. At the crux of Counts I and V is their dissatisfaction with the fact that their compensation rates are subject to appropriation by the Legislature. Plaintiffs do not contend, nor can they, that any of the named defendants exercises control over the Legislature’s decision to limit payments in this way, or to the amounts the Legislature appropriates. Without appropriations increasing plaintiffs’ compensation rates, defendants have no ability to provide the relief sought of paying higher rates. See Bates v. Director of the Office of Campaign and Political Finance, 436 Mass. 144, 175 (2002) (where defendant director of Office of Campaign and Political Finance lacked authority to reach and distribute clean elections funds which Legislature did not appropriate, court could not order director to distribute funds). Because Counts I and V do not present an actual, justiciable dispute between the named parties before the Court, but rather between plaintiffs and the Legislature, declaratory relief is unavailable. See LIMITS v. President of the Senate, 414 Mass. 31 (1992) (neither declaratory judgment nor mandamus are available forms of relief against the Legislature); Alliance, AFSCME/SEIU, AFL-CIO v. Commonwealth, 425 Mass, at 537-39 (court lacked jurisdiction to declare that governor invalidly exercised his authority, where governor could not be named as defendant, and attorney general, who could have represented other executive officers, declined to defend action).
Counts I and V fail to allege a cognizable controversy. Plaintiffs do not argue that the low compensation rates have caused their representation of indigents to be ineffective. The contention that on unspecified occasions at unidentified courthouses, some unnamed indigents have had their arraignments or bail reviews prejudicially delayed due to shortages of bar counsel is far too vague to amount to a controversy. Likewise, plaintiffs’ prediction that at some indefinite point in the future, one or more currently unidentified indigent clients will receive ineffective assistance of counsel due to these circumstances and eventually lead to a systemic failure is not sufficiently anchored in the alleged facts to create a specific, ascertainable controversy. Hypotheses such as these are not appropriate subjects for declaratory relief. See Boston Herald, Inc. v. Superior Court Department of the *267 Trial Court, 421 Mass, at 504. Because Counts I and V do not present an actual controversy for which relief is available under the Declaratory Judgment Act, G.L.c. 231 A, they must be dismissed for lack of jurisdiction. See Gay & Lesbian Advocates & Defenders v. Attorney General, 436 Mass, at 133-34 (no declaratory relief available to plaintiffs challenging the validity of statutes prohibiting crimes against nature and unnatural and lascivious acts, where there was no actual controversy absent pending criminal charges against plaintiffs, and where plaintiffs’ stipulation that they engage in such acts in certain locations was too general to conclude that there was an actual controversy over whether the conduct is prohibited or not).
b. Standing
Plaintiffs have not alleged facts indicating that they have standing to assert a claim for which the harm suffered was not by themselves but others. “Only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of adjudicating disputes or particular issues.” Barbara F. v. Bristol Division of the Juvenile Court Department, 432 Mass. 1024, 1025 (2000) (ellipses omitted). To have standing in any capacity, a litigant must show that the challenged action has caused him or her actual injury. Slama v. Attorney General, 384 Mass. 620, 624 (1981); Barbara F. v. Bristol Division of the Juvenile Court Department, 432 Mass, at 1024. “Injuries that are speculative, remote, and indirect are insufficient to confer standing.” Ginther v. Commissioner of Ins., 427 Mass. 319, 323 (1998).
In order to have representational standing as claimed by plaintiffs, litigants must allege facts showing that it is difficult or impossible for the actual rightholders to assert their claims. See Slama a Attorney General, 384 Mass, at 624. Plaintiffs’ vague assertion that “(t]his class of indigent defendants has no ability to convey a message but for the services of the plaintiff class” does not meet the test for representational standing. Even assuming arguendo that plaintiffs’ clients could state a claim in the current situation that the low compensation rates pose a serious and immediate risk to their rights to counsel and due process, plaintiffs have advanced no reason that the clients could not prosecute that claim in their own right, either pro se or with legal aid. Compare Planned Parenthood League of Massachusetts, Inc. v. Bell 424 Mass. 573, 578-79 (1997) (abortion clinic had representational standing to seek injunction against protester, where it would be difficult for clinic’s patients to bring action due to privacy concerns). Absent any alleged facts indicating that it would be difficult or impossible for these clients to assert that bar counsel’s low compensation rates risk undermining the clients’ constitutional rights, plaintiffs lack standing to represent those persons. See Barbara F. v. Bristol Division of the Juvenile Court Department, 432 Mass, at 1025 (where court ordered pregnant woman to be taken into custody for medical examination to determine her health and that of her unborn child, and that woman was able to assert her constitutional and statutory rights, another pregnant woman lacked representational standing to seek relief from order).
c. Separation of Powers
Counts I and V indirectly and directly challenge the constitutionality of the statutorily prescribed process for payment of plaintiffs’ compensation. Such efforts are generally prone to defeat. See Blixt v. Blixt, 437 Mass. 649, 652 (2002) (“A facial challenge to the constitutional validity of a statute is the weakest form of challenge, and one that is the least likely to succeed”). Here, the Legislature acted within the scope of its authority in enacting the “subject to appropriation” provision of G.L.c. 211D, §11, and in determining the amounts to be appropriated thereunder. See German v. Commonwealth, 410 Mass. 445, 451, 447 (1991) (as an office created by the Legislature, CPCS may be regulated, limited, enlarged or terminated by law, as public exigency or policy may require). Separation of powers principles generally prohibit this Court from invalidating such legislative decisions, particularly with respect to a statutory agency. See LIMITS v. President of the Senate, 414 Mass. 31, 35 (1992) (observing that the “separation of powers principles . . . call for the judiciary to refrain from intruding into the power and function of another branch of government”); Zayre Corp. v. Attorney General, 372 Mass. 423, 433 (1977) (the “principle of judicial restraint includes recognition of the inability and undesirability of the judiciary substituting its notions of correct policy for that of a popularly elected Legislature”).
This Court recognizes that “(t]he scope of inherent judicial authority reaches beyond traditional adjudicatory powers and encompasses (but is not limited to) the court’s power to commit the fiscal resources of the Commonwealth . . . necessary to ensure the proper operation of the courts . . .” First Justice of the Bristol Juvenile Court v. Clerk-Magistrate of the Bristol Juvenile Court, 438 Mass. 387, 397 (2003). “When the funds provided for the judicial branch are not enough to maintain a minimally adequate court system, the judiciary has the power to order the provision of such funds, with or without legislative appropriation.” County of Barnstable v. Commonwealth, 410 Mass. 326, 330 (1991). The judiciary should reserve its use of this inherent authority, however, to those occasions when established methods of exercising judiciary functions fail. See id. at 332, citing O’Coin’s, Inc. v. Treasurer of the County of Worcester, 362 Mass. 507, 516 (1972).
Plaintiffs invoking inherent judicial authority to order the expenditure of unappropriated monies must allege facts indicating that all available resources, mechanisms for relief and legislative appropriations are insufficient to address the problems allegedly *268 caused by inadequate appropriations. See County of Barnstable v. Commonwealth, 410 Mass, at 333. Courts should not consider using their inherent power in the absence of such developed claims. Id. at 333, 334 (affirming denial of relief under G.L.c. 211, §3, and transferring case to Superior Court with directions to plaintiffs to amend (and sever) complaints to show insufficiency of legislative appropriations and other available resources to maintain counties’ courthouse facilities and services).
Plaintiffs have not alleged facts justifying resort to the judiciary’s inherent authority in order to safeguard their clients’ constitutional rights or the Court’s core functions. Established methods are available to the judiciary and plaintiffs’ clients to address any actual instances of ineffective representation resulting from the low compensation. Those who are harmed can seek relief through appeals and new trial motions premised on ineffective assistance grounds. Should the foreshadowed “systemic failure” materialize, the volume of overturned convictions and retrials of civil matters attributable to underfunding of assigned counsel would effectively convey to the Legislature the need to increase funding, and it would more likely warrant exercise of the judiciary’s inherent authority to protect the clients’ rights and the proper operation of the courts.[13]
Nor do plaintiffs’ allegations justify even considering use of the inherent judicial authority in order to resolve claims of prejudice to liberty interests incidental to delays in arraignments and bail hearings as a result of unavailability or shortages of bar counsel. The Second Amended Complaint contains a dearth of information not only as to the nature and causes of this purported dilemma but also as to what remedies should be available to address it short of resort to the> extraordinary, inherent authority. Even if these underdeveloped allegations could be read as claims of constitutional violations, and assuming for the sake of argument that these claims could escape effective, timely and full judicial appellate review under G.L.c. 211, §3,[14] or single justice appeals on bail, plaintiffs have failed to allege facts showing that other judicial remedies would be unavailing. Accordingly, in addition to the deficiencies related to declaratory judgment and standing, Counts I and V must be dismissed for failure to state a claim.
2. Takings Claims (Counts II and III)
Plaintiffs allege that defendants’ failure to pay them fair compensation constitutes a taking of property for public use without just compensation and without due process of law in violation of Article 10 of the Massachusetts Declaration of Rights[15] and the Fifth Amendment to the Constitution of the United States, both of which prohibit a governmental entity from taking private property for public use without just compensation. [16]
In deciding whether governmental conduct results in a “taking,” we focus on both the character of the action and the extent of the interference with property rights . . . Government action does not constitute a ‘taking’ if the plaintiff does not have a property right in the affected property . . . [T]he government is not required to compensate an individual for denying him the right to use that which he has never owned.
German v. Commonwealth, 410 Mass, at 450 (citations omitted). Plaintiffs’ takings claims fail under both aspects of this test.
First, government action does not amount to a taking without legal compulsion, which is not present where plaintiffs voluntarily subject themselves to known obligations. See Meriden Trust and Safe Deposit Co. v. F.D.I.C., 62 F.3d 449, 455 (2d Cir. 1995); Garelick v. Shalala, 987 F.2d 913, 916 (2d Cir.), cert, denied sub nom. Garelick v. Sullivan, 510 U.S. 821, 114 S.Ct. 78, 126 L.Ed.2d 47 (1993). Plaintiffs here do not claim to have been compelled to accept assignments from CPCS. To the contrary, they point out that many attorneys are deciding to remove themselves from the Private Counsel Division list. Those who accept assignments do so with notice of the applicable compensation rates. Therefore, plaintiffs’ past and ongoing agreements to provide representation under this arrangement cannot constitute a taking by any of defendants.
Moreover, in order to withstand a motion to dismiss a takings claim, plaintiffs must plead sufficient facts which, if true, show that they possess a property interest which may be protected by the Fifth Amendment. See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 973 (1st Cir. 1993), citing Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124-25, 98 S.Ct. 2646, 2659-60, 57 L.Ed.2d 631, 648 (1978). Not all asserted property interests are constitutionally protected; mere unilateral expectations or abstract needs do not qualify as property interests entitled to protection. Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d at 973. “Whether one’s interest or entitlement rises to the level of a protected property right depends upon the extent to which one has been made secure by State or Federal law in its enjoyment.” Wilmarth v. Town of Georgetown, 28 Mass.App.Ct. 697, 701 (1990). A property interest can be created by a statute or an implied contract. See Rhode Island Brotherhood of Correctional Officers v. Rhode Island, 264 F.Sup.2d 87, 102 (D.R.I. 2003). Plaintiffs, must point to credible sources for their claimed property interest. Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d at 973.
With respect to both Counts II and III, the circumstances here compel the conclusion that plaintiffs have no constitutionally protected property interest in receiving the higher rates of pay they seek: (1) plaintiffs *269 do not claim that they have been deprived of monetary benefits already appropriated, (2) the Legislature has authority and discretion in appropriating funds for CPCS appointed counsel in accordance with its assessment of the Commonwealth’s needs and policies, and (3) defendants lack authority to pay plaintiffs at rates which are inconsistent with legislative appropriations. See German v. Commonwealth, 410 Mass, at 450 (CPCS-employed attorney had no property interest in future wages which Legislature reduced by enacting furlough law during fiscal emergency); Hoffman v. City of Warwick, 909 F.2d 608, 616 (1st Cir. 1990) (statute repealing economic benefits of enhanced seniority as returning war veterans was not a taking where monetary benefits had not yet been paid over; “(n)oncontractual employee benefits that a recipient has not yet received, but has a mere expectation of receiving, are not property as to which the government . . . must provide just compensation”); Rhode Island Brotherhood of Correctional Officers v. Rhode Island, 264 F.Sup.2d at 102-03 (because statutory amendment changing calculation of educational incentive pay for correctional officers did not deprive those officers of monetary benefits already paid, plaintiff failed to allege a compensable taking).[17] Therefore, Counts II and III must be dismissed.
3. Equal Protection Claim (Count IV)
Plaintiffs complain that defendants establish the controversial compensation rates without taking into account the value and actual cost of providing such services, whereas defendants do factor in these considerations when compensating others who provide services to the Commonwealth.[18] Plaintiffs seek a declaration that this disparity violates the Equal Protection Clause because no rational basis or legitimate purpose justifies treating plaintiffs differently than (1) other attorneys who provide services for the Commonwealth; (2) other professionals who provide services for indigent persons; or (3) other non-professionals who provide services for the Commonwealth.
“One indispensable element of a valid equal protection claim is that individuals who are similarly situated have been treated differently.” In the Matter of Corliss, 424 Mass. 1005, 1006 (1997). See also City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439-40, 105 S.Ct. 3249, 87 L.Ed.2d 313, 320 (1985) (“The Equal Protection Clause . . . [directs] that all persons similarly situated should be treated alike”); Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortgage Finance Corp., 246 F.3d 1, 7 (1st Cir. 2001). To state an equal protection claim, then, plaintiffs must allege that they and the other service providers with whom they draw a comparison are similarly situated in all relevant aspects. Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortgage Finance Corp., 246 F.3d at 8.
[T]he “relevant aspects” are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.
Id., quoting The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989).
Plaintiffs’ allegation that their compensation is “far below those of similar professional services [sic] and lower than those of many nonprofessional vendors” misses the mark. Apart from categorizing the other service providers as (1) other attorneys who provide services for the Commonwealth, (2) other professionals who provide services for indigent persons, and (3) other non-professionals who provide services for the Commonwealth, and noting that some are experts and that many provide services which are only reasonably necessary, nowhere in the Second Amended Complaint do plaintiffs identify the position or nature of the work of those with whom they seek to be compared. Nor do plaintiffs describe in meaningful terms the rates of pay which any of the other providers receive. Their bare, conclusoiy classifications of the other providers are too general to satisfy the “similarly situated” standard.
Despite their vagueness, the facts asserted by plaintiffs reveal fundamental differences between the two groups: (1) plaintiffs are the intended or third-party beneficiaries of contracts between CPCS and intermediary county-based agencies, whereas there is no allegation that the other service providers are beneficiaries under similar contractual arrangements; (2) plaintiffs are all professionals, whereas the other group of providers is made up of professionals and nonprofessionals; (3) plaintiffs’ compensation rates are the product of (and contingent upon) legislative decision-making, whereas there is no allegation that the other providers’ compensation rates are; and (4) plaintiffs’ services are constitutionally required, while those of many of the other providers are not.
Plaintiffs fare no better even if this Court were to infer the identity of the other providers from CPCS’s enabling statute. General Laws c. 211D, §§1, 6, and 9 (d-f, i), list several providers of services to CPCS: investigators, social services providers, expert witnesses, and clerical workers. For legal representation provided through its Public Counsel Division, CPCS relies upon its own staff of attorneys. G.L.c. 211D, §6, who “shall be paid at salaries comparable to the salary paid to an attorney paid in a district attorney’s office.” G.L.c. 211D, §13. Both the legal and nonlegal staff of the Public Counsel Division are full-time public employees; its staff attorneys are barred from engaging in the private practice of law. Id.
These statutory provisions confirm the distinctions outlined above between plaintiffs and other service providers. Furthermore, by deliberate legislative design, important differences exist between plaintiffs and the other attorneys who perform legal services for *270 CPCS. Plaintiffs receive assignments on a case-by-case basis from the Private Counsel Division, are not barred from engaging in the private practice of law, and “shall [not] be considered to be or have any rights as state employees.” G.L.c. 211D, §6(b). In contrast, the Public Defender Division utilizes its own staff of salaried attorneys, who are state employees and are prohibited from engaging in the private practice of law. See G.L.c. 211D, §§1, 6(a).
Because plaintiffs are substantially different from the other service providers, they are not similarly situated, and their equal protection claim lacks any foundation. See The New York Times Co. v. Commissioner of Revenue, 427 Mass. 399, 406-07 (1998) (tax imposed on corporate aircraft but not commercial aircraft owned by airlines or other surface vehicles used for interstate transportation did not violate the equal protection clause absent evidence that they were “relevantly similar”).
Even if the two groups could be viewed as similarly situated insofar as both provide services to CPCS, Count IV would still not survive the motion to dismiss. As acknowledged by plaintiffs, because they do not claim to be members of a suspect group or that a fundamental interest is involved, the compensation rate set by CPCS withstands equal protection scrutiny as long as it is supported by a rational basis. Naples v. Commissioner of the Department of Employment and Training, 412 Mass. 631, 635 (1992); Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Board, 416 Mass. 635, 640 (1993). See also Route One Liquors, Inc. v. Secretary of Administration and Finance, 439 Mass. 111, 120-21 (2003) (“[t]he right‘to pursue one’s business is [not] a fundamental right infringement of which deserves strict judicial scrutiny’ ”). The rational basis testis lenient. See Walker v. Exeter Region Co-Op. School District, 284 F.3d 42, 46 (1st Cir. 2002). “[T]he rational basis test requires that ‘an impartial lawmaker could logically believe that the classification would serve a legitimate purpose that transcends the harm to the members of the disadvantaged class.’ ” Goodridge v. Department of Public Health, 440 Mass. 309, 330 (2003).
A State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality . . . The problems of government are practical ones and may justify, but they do not require, rough accommodations — illogical, it may be, and unscientific.
Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (citations and quotations omitted). “A classification will be considered rationally related to a legitimate purpose if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” Chebacco Liquor Mart, Inc. v. Alcoholic Beverages Control Commission, 429 Mass. 721, 723 (1999) (quotations omitted).
The distinctions between plaintiffs and other service providers demonstrate a rational basis for the differences in setting compensation rates. Plaintiffs, along with other attorneys who accept assignments from the Private Counsel Division, comprise a large group whose 2,500 members offer the same type of service, constitutionally required legal representation, which is at the core of CPCS’s mandate. In these circumstances, it is conceivable and even likely that obtaining plaintiffs’ services at “group rates” through contracts with county agencies is an administratively more efficient and economical method of compensation than could be employed with providers who do not share these characteristics. Plaintiffs’ vague descriptions of the other service providers undermine any inference that they make up a comparably large group which offers, among its own numbers, similar services which can be contracted at reduced rates applicable to the entire group, or that their work is as crucial to CPCS as that of plaintiffs. See Barrington Cove v. Rhode Island Housing and Mortgage Finance Corp., 246 F.3d at 8-9 (dismissing equal protection claim where plaintiff failed to allege with reasonable particularity characteristics showing that it was similarly situated to other applicants for supplemental federal income tax credits, and where allegations regarding plaintiffs application revealed reasonable basis for defendant’s decision to treat plaintiffs application differently than those of other applicants). Cf. Machado v. Committee for Public Counsel Services, 39 Mass.App.Ct. 178, 182-83 (1995) (because lawyers who furnish private counsel services are members of a learned profession in which admission is conditioned and policed by standards of educational and intellectual attainment and moral conduct, they are different from commercial vendors whose services, if paid late by the Commonwealth, are owed interest pursuant to G.L.c. 29, §29C). Moreover, in the interest of preserving scarce public monies, defendants could rationally choose to set the lowest possible compensation rates, even if that means losing experienced attorneys and overburdening those remaining.
ORDER
Based on the foregoing, defendants’ motion to dismiss is ALLOWED.

 Plalntiffs ask this Court to declare that: (1) defendants have a constitutional and statutory obligation to ensure the availability of qualified assigned private counsel and that they are able to render effective representation to children and indigent adults: (2) defendants’ failure to raise plaintiffs’ compensation rates has created a severe and unacceptably high risk that their clients are receiving inadequate legal representation in violation of the Massachusetts Declaration of Rights and the United States Constitution; (3) portions of G.L.c. 21 ID fixing and limiting plaintiffs’ compensation rates and rendering payment subject to legislative appropriation are unconstitutional; and (4) the method of setting plaintiffs’ compensation rates violates the Equal Protection Clause. Plaintiffs further seek orders: (1) establishing adequate compensation rates for their services; (2) awarding damages to compensate plaintiffs for the difference between the fair value of their services and the rates actually paid to them from 1996 to the present; (3) awarding damages to compensate plaintiffs for the difference between the rates they were paid and the fair compensation rates set by CPCS in December of 2002, from that time to the present.

 Although defendants filed their motion to dismiss in response to plaintiffs’ First Amended Complaint, at the hearing in this matter and in their supplemental memoranda, the parties treated the motion to dismiss as challenging each of the counts in the Second Amended Complaint. For this reason, I have allowed plaintiffs’ motion to amend their complaint a second time, and treat the motion to dismiss as addressing the Second Amended Complaint.

 Although plaintiffs claim to bring this action “on behalf of members of the greater class of attorneys who accept assignments to provide [constitutionally required legal representation of indigent persons," and also refer to their clients as members of a “class of indigent clients,” they have not sought or received class certification with respect to either group.

 The right to appointed counsel in Massachusetts extends to a variety of criminal and civil matters, including but not limited to proceedings involving termination of parental rights (G.L.c. 119, §29), representation before the Sex Offender Registry Board (G.L.c. 211D, §16), mental health commitments (G.L.c. 123, §5), and proceedings relating to sexually dangerous persons (G.L.c. 123A, §14).

 General Laws c. 211D, §11, reads in relevant part:
The committee shall establish rates of compensation payable, subject to appropriation, to all counsel who are appointed or assigned to represent indigents within the private counsel division . . . Such rates of compensation shall be reviewed periodically at public hearings held by the committee at appropriate locations throughout the state, and notice shall be given to all state, counly and local bar associations and other interested groups, of such hearings by letter and publication in advance of such hearings. Such periodic review shall take place not less than once every two years.
(Emphasis added.)

 Defendants annexed to their Consolidated Memorandum in Support of Motion to Dismiss the Amended Complaint and in Opposition to Motion to Further Amend the Complaint the Acts and Resolves for 1997-2002. Those enactments reveal that in 2002 the Legislature set the rates of compensation at the rates now paid by CPCS. The Court takes judicial notice that these appropriations represent law.

 General Laws c. 21 ID, §10, requires CPCS to “monitor and evaluate compliance with the standards and performance of counsel in its divisions in order to insure competent representation of defendants in all courts of the commonwealth and shall establish a procedure for the review and disposition of client complaints . . .”

 The Court notes that CPCS is required to establish standards for the Private Counsel Division “which shall include but not be limited to:... (c) specified caseload limitation levels; . . . [and] (h) adequate supervision provided by experienced attorneys who shall be available to less experienced attorneys.” G.L.c. 211D, §9. Plaintiffs do not identify the standard caseload limitation levels or allege that their caseloads exceed it, nor do they allege that the supervision available to bar counsel falls below the standard set by CPCS.

 Plaintiffs have not alleged with any clarity whether, or how, the prospective due process violations may be distinct from the purported threatened violations of the right to counsel. Accordingly, the Court will address the due process aspect of Counts I and V as part of the ineffective assistance of counsel claims.

 The cases cited by plaintiffs are not binding on this Court. Moreover, although each involves the question of inadequate compensation for assigned or appointed counsel, either the declaratory judgment standard or the compensatory scheme for assigned or appointed counsel in each jurisdiction renders the cases inapposite. See New York Lawyers’ Association v. State, 742 N.Y.S.2d 16 (N.Y.App.Div. 2002) (recognizing validity of prospective claim for declaratory relief); Makemson v. Martin County, 491 So. 2d 1109 (Fla. 1986) (challenge to statutory cap on total fee for assigned counsel rather than hourly rate); State in Interest of Johnson, 475 So.2d 340 (La. 1985) (permitting compensation of court-appointed counsel where no statute provided for such payment in child abandonment proceeding); Smith v. State of New Hampshire, 394 A.2d 834 (N.H. 1978) (attorneys obliged to represent indigents when appointed by court).

 General Laws c. 211, §3, grants the Supreme Judicial Court general superintendence of all courts of inferior jurisdiction “to correct and prevent errors and abuses therein if no other remedy is expressly provided” and general superintendence of the administration of all such courts. Section 3 limits the power of general superintendence, so that the Supreme Judicial Court cannot supersede any general or special law unless the court finds it unconstitutional.

 Art. 10 reads in relevant part: “[N]o part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people . . . And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor.”

 The Fifth Amendment “takings clause” is applicable to the states through the Fourteenth Amendment. Webb’s Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980).

 The differences between Counts II and III do not merit a separate analysis or result. In Count II, plaintiffs allege that CPCS “failed to set rates which constitute ‘fair compensation’ by either establishing such rates pursuant to [G.L.c. 211D, §12,] or by adequately conveying this information to the Legislature.” They do not, however, assert that such failure was by any of the named defendants (CPCS is not a defendant in this action) or that this failure constitutes the taking. Instead, both Counts II and III charge that the taking was defendants’ failure to compensate plaintiffs fairly. Even if Count II could be read to allege that the named defendants’ failure to set fair rates was a taking, it would still fail. Plainly, if plaintiffs have no constitutionally protected property interest in the rates appropriated by the Legislature, their interest in the rates set by CPCS and subject to legislative appropriation is even more tenuous. Cf. German v. Commonwealth, 410 Mass, at 450.

 There is no support for plaintiffs’ reading of G.L.c. 211D, §§9 and 11, requiring defendants to collect data to determine the appropriate rates of compensation for bar counsel’s ser *272 vices and to publish reports containing such data. Section 9 can be construed to require data collection with respect to certain vendors, but not bar counsel. Section 11 does not call for a published report or data collection, but only that CPCS conduct public hearings at least every two years to review compensation rates for bar counsel. Moreover, Section 4 requires an annual public report but does not say the report must contain data regarding appropriate compensation rates for bar counsel.