THOMAS LEWIS *vs.* COMMITTEE FOR PUBLIC
COUNSEL SERVICES
(and a companion case[1]).

No. 98-P-2011.

Suffolk. April 14, 2000. - October 25, 2000.

Present: BECK, DREBEN, & RAPOZA, JJ.

*Committee for Public Counsel Services. Practice, Civil,* Relief in the nature of certiorari, Discovery. *Attorney at Law,* Compensation.

In actions in the nature of certiorari seeking review of determinations by the Committee for Public Counsel Services (CPCS), made pursuant to the authority vested in CPCS by G. L. c. 211D, § 12, a Superior Court judge correctly concluded that substantial evidence in the record supported the CPCS determination that two attorneys had submitted excessive billings for CPCS work and that repayment was due the Commonwealth for the overbilled amounts [322-323, 326-328]; further, there was no merit to the attorneys' claims that they were denied due process in the CPCS hearings [323-324, 328].

CIVIL ACTIONS commenced in the Superior Court Department on November 8, 1996, and December 20, 1996, respectively.

After consolidation, the cases were heard by *Diane M. Kottmyer*, J., on motions for judgment on the pleadings.

*Terry M. Craven* for the plaintiffs.

*John R. Hitt*, Assistant Attorney General, for the defendant.

DREBEN, J. Thomas Lewis and John J. Fox, attorneys certified by the Committee for Public Counsel Services (CPCS) to represent indigent defendants in certain courts of the Commonwealth, sought review in the nature of certiorari, G. L. c. 249, § 4, of decisions of CPCS determining that they had overbilled CPCS. Those decisions required them to repay the Commonwealth substantial sums plus interest, and, in the case of Fox, ordered him removed, that is disqualified to serve on any CPCS panels. The cases were consolidated in the Superior

---

[1]John J. Fox *vs.* Committee for Public Counsel Services.

Court. After the plaintiffs moved for judgment on the pleadings, judgments entered for CPCS. On appeal, each plaintiff argues that there was insufficient evidence to support CPCS's decision and that CPCS's policies and procedures violated his right to due process. We affirm the judgments of the Superior Court affirming the decisions of the executive committee of CPCS.

Pursuant to G. L. c. 211D, § 12, set forth in relevant part in the margin,[2] and CPCS's "Manual for Counsel Assigned Through the Committee for Public Counsel Services Policies and Procedures" (manual), the audit and oversight department of CPCS (audit department) notified Lewis and Fox that it was concerned that they were improperly preparing their bills. Although each attorney submitted additional information, a staff auditor found that each of them had overbilled CPCS and recommended repayment. After holding hearings at the request of the attorneys, the executive committee of CPCS approved the recommendations, with some modification in the case of Fox.

Our function in reviewing an appeal in the nature of certiorari is only to "inquire whether the [CPCS] decision was 'legally tenable and supported by substantial evidence on the record as a whole.' " *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.*, 422 Mass. 459, 464 (1996), quoting from *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292, 297 (1990) (other citation omitted).

1. *Attorney Lewis.* We turn first to the case of Thomas Lewis. Based on the materials before him, the CPCS executive committee hearing officer found, inter alia:

> "During FY 1994, attorney Lewis submitted bills (Requests for Payment) to CPCS for 2,785.50 hours of services to children and parents in non-criminal proceedings and was paid $91,233.75. The bills were for services on 340 days during the period of July 1, 1993 through June 30, 1994, including most holidays and weekends, and for services on 40 days in excess of 10 hours a day.

---

[2]The section, as then in effect, provided in relevant part:

"The committee shall establish policies and procedures to provide fair compensation to private counsel, which shall include a remedy for any attorney aggrieved by the amount of payment. The committee shall also establish an audit and oversight department to monitor billing and private attorney compensation. . . . The committee may . . . prescribe such policies and procedures for payment as it deems appropriate." G. L. c. 211D, § 12, as amended through St. 1993, c. 110, § 221.

"The description of services in the time sheets . . . for the sixteen dates specified by the department[3] reflect a pattern of repetitious one quarter hour charges for reviewing and updating clients' files. These tasks were involved in 268 of the 369 items for which Lewis billed and was paid."[4]

The hearing officer also found that on another day Lewis consistently made a one-half hour charge for a form letter to which four to six lines of text were added and, in each instance, included a notation of "review or update file and trial preparation."

The hearing examiner concluded:

"The time spent by Lewis in the review and update of the files of his children and adult clients far exceeds the standard of reasonableness applicable in civil fee disputes. See *In the Matter of Fordham*, 423 Mass. 481, 489-490 (1996), [cert. denied, 519 U.S. 1149 (1997)]. His continual resort to reviews and updates of files is clearly excessive within the meaning of S.J.C. Rule 3:07, DR 2-106(B). *Id.* at 485-487. A prudent, experienced lawyer would not consider it productive to devote well in excess of fifty percent of his time in representing these clients assigned to Lewis through CPCS, in reviewing and updating files. He would use his time for more significant efforts on behalf of the clients.

"There is no adequate explanation why Lewis routinely went through his active, and in some instances, his inactive files. . . .

---

[3]In its letter notifying Lewis that he was being audited, the audit department indicated that Lewis was permitted to limit his explanations to records for sixteen specific dates, but was advised that the audit was not restricted to those dates.

[4]The decision continued: "The time sheet for Saturday, March 26, 1994, for example, states a quarter hour charge for 'update rev file' as to twenty-two of the twenty-nine listed clients; and a quarter hour charge is made with respect to four other clients for 'lt. to client; update file.' Similarly, on March 29, 1993, one quarter hour charges are made for twenty-seven of thirty-three clients (21 for 'update rev file' and 6 for a phone call and 'update file'); and one half hour is charged with regard to four clients for a phone call and 'update file.' On each of these dates, the total hours billed was 9.75. On both dates, most of the time was billed solely for 'update rev file' (56% on 3/26/94, 69% on 3/29/93)."

"Lewis's compliance with the letter of the billing procedures in the Manual and of the CPCS performance standards . . . does not provide him a safe harbor. His unreasonable and excessive time charges for reviewing and updating files are not justified."[5]

Based on this conclusion, the executive committee, relying on the hearing officer's findings and conclusions, considered appropriate the audit department's recommendation that Lewis's time and charges be reduced approximately twenty-four per cent, that is, that his time be reduced from 2,785.5 hours to 2,142 hours and that he be required to repay the Commonwealth $22,522.50 pursuant to a designated payment schedule.[6]

CPCS submitted numerous time sheets of Lewis which supported the hearing officer's description of the entries. Lewis does not contest that those entries were made. He argues, instead, as stated in a letter he sent to the audit department, that his responsibility for clients who are children requires constant review and updating of files, including reviewing reports.

The executive committee, based on the findings of the hearing officer which were supported by substantial evidence, was not arbitrary or capricious in upholding the recommendation of the audit department. In reaching its decision, the committee explicitly relied on S.J.C. Rule 3:07, DR 2-106(B), as appearing in 382 Mass. 698 (1981), which was repealed effective January 1, 1998, but was in effect at the time the services were rendered and at the time the bills were submitted. The application of that disciplinary rule, which applied to all attorneys in the Commonwealth, was appropriate in determining whether the fee charged was excessive. The rule provided:

"A fee is clearly excessive when, after a review of the

[5]Although the staff auditor's disposition criticized Lewis for billing the minimum .25 hour charge for each task (a criticism made by the hearing officer in the Fox case), this was not the basis of the executive committee's criticism of Lewis. Accordingly, our discussion of the provisions in the manual with reference to Fox, see note 10, *infra*, and accompanying text, does not apply to Lewis.

[6]The report of the audit department noted: "Attorney Lewis does have a method of time keeping and did not intentionally overbill the Commonwealth. He was very diligent in providing information to us and cooperated completely." In reducing the number of hours billed, the department credited attorney Lewis with working fifty-one weeks of fiscal 1994 at forty-two hours per week for a total of 2,142 hours.

facts, a lawyer of ordinary prudence, experienced in the area of the law involved, would be left with a definite and firm conviction that the fee is substantially in excess of a reasonable fee."[7]

In *Matter of Fordham*, 423 Mass. at 492-493, the Supreme Judicial Court stated that the language quoted "creates explicitly an objective standard by which attorneys' fees are to be judged." The executive committee, obviously experienced in the area of law involved, did not need to credit Lewis's assertion that all his claimed time for review and updating was required.

Lewis also claims that he was deprived of due process because he was denied the right to prehearing discovery. In seeking discovery, Lewis sought to find out which of his specific charges were allowed and which were disallowed. However, Lewis's billings were discounted for the most part because his charges for reviewing and updating of files were determined to be excessive; more than fifty per cent of his time was spent on such tasks (the audit department found that seventy-two per cent of the tasks billed by him for the sixteen dates were for reviewing and updating of files). In such circumstances, the reduction by the executive committee of a percentage of the hours billed was a reasonable approximation of the overcharges and was not improper. See *Olmstead* v. *Murphy*, 21 Mass. App. Ct. 664, 667-668 (1986), where the court reduced the number of hours which could be compensated for under G. L. c. 215, § 34A, by fifty per cent because it found the hours logged by counsel to be excessive, even though "pinpoint accuracy" was

---

[7]The rule continued: "Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

not possible. In view of the percentage reduction of Lewis's hours, a showing of specific charges disallowed was not relevant or feasible, and hence, the denial of discovery was not improper. See *Matter of Tobin*, 417 Mass. 92, 102-103 (1994).

Lewis's additional claims that at the hearing he was unduly limited to one-half hour and precluded from questioning the staff auditor who had made the initial recommendation were correctly answered by the Superior Court judge. The judge concluded, it "is evident from the transcript[] of the hearing[] [Lewis was] not denied the right to rebut the Disposition Recommendation findings" of the audit department. Lewis had no right to cross examine the author of the disposition recommendation "because 'inquiry into the mental processes of administrative decision makers at administrative hearings is inappropriate.' *New England Medical Center, Inc.* v. *Rate Setting Commn.*, 384 Mass. 46, 56 (1981)."

2. *Attorney Fox.* The executive committee of CPCS (and its audit department) based their decisions requiring Fox to repay the Commonwealth for excessive fees on grounds different from those applicable to Lewis. We summarize the findings of the executive committee's hearing officer, sometimes quoting from her memorandum: Ninety-five per cent of Fox's practice is comprised of CPCS assigned cases, primarily care and protection cases. "Attorney Fox was previously audited by CPCS in September 1991." The issue in the previous audit was Fox's billing practices, in that his billings did not reflect actual time spent, but rather time computed in standard increments. In its 1995 letter informing Fox that an audit of his fiscal year 1994 bills was being conducted, Fox was requested to submit "time sheets, calendar entries, and any other documentation [he has] which substantiates the hours [he has] billed," as to sixteen specified dates in fiscal year 1994.[8] Fox provided time sheets for only ten of the dates requested, stating that he was unable to locate time sheets from April 1, 1994 to June 30, 1994. He indicated that he makes notes of conversations and other activities which he places in the case file and then later transposes the information to a time sheet. The case file, he explained, contains more detailed information. With the exception of time sheets for ten of the sixteen days requested, and a sample file notation and letter, Fox did not provide the audit committee

---

[8]As in the case of Lewis, Fox was advised that the audit was not restricted to those dates. See note 3, *supra*.

with any other documentation for the sixteen days requested which would substantiate the hours he billed. On several of these sixteen dates (the audit department listed five), Fox submitted time sheets which did not reflect the number of clients billed. He billed for more clients than reflected on the time sheets. He explained these discrepancies as "inadvertence, omission, or forgetfulness." The hearing officer found that:

> "Review of the ten days of time sheets [of the sixteen requested] [provided by] Attorney Fox revealed that 96% of the telephone calls he billed for were for .25 hours and 75% of his conferences were .25 hours. There was no further documentation to substantiate that all the calls were fifteen . . . minutes, nor did the time sheets provided show the actual time spent on each call. This presented the same issue as in the 1991 audit."

The hearing officer also found that Fox was "familiar with the billing policies and practices of CPCS" and that it was:

> "unrealistic for an attorney to have 96% of his telephone calls to be exactly fifteen . . . minutes in length. Although conferences can last fifteen . . . minutes, they can also be more or less. Because Attorney Fox did not submit necessary documentation to prove otherwise, I find that in fiscal 1994 Attorney Fox billed in standard increments, rather than actual time spent which is not in keeping with established policies and procedures of CPCS billing practices."

Based on these findings, the hearing officer concluded that the billing practices of Fox for fiscal year 1994 did not meet the standards set forth in the rules of CPCS, and that because he did not provide supporting documentation to support his fiscal year 1994 bills, the Commonwealth "is entitled to reimbursement for what is clearly billing [for time computed] in standard increments rather than actual time resulting in overbilling." Since Fox's failure to keep appropriate records made it difficult to determine the amount of overbilling, the hearing officer concluded that the compromise reached by the audit department was fair with respect to the weekday credit to Fox of 1,912

hours.[9] She concluded, however, that for the fifty-one weekends, he should be credited for two hours per weekend day, for a total of 204 hours, thus reducing the recommended overpayment to $13,370.

As to the recommendation of the audit department that Fox be removed from CPCS panels, the hearing officer concluded that although Fox did not willfully defraud the Commonwealth, and although his failure to meet the standards for billing practices did not mean that he failed to provide competent legal services, the remedy should be upheld, and stated:

> "Through his own admissions, and by his failure to provide requested documents, Attorney Fox has demonstrated that either he cannot maintain the necessary records required by CPCS, or that he refuses to maintain those records."

Fox's main contention is that the ruling that his billing methods did not meet CPCS standards is not supported by the record because his method comports with the manual. He refers to the manual provisions in force for fiscal year 1994, which we set forth in the margin.[10]

The provisions as to billing in quarter hour increments are poorly drafted and may, on first reading, mislead an attorney to

---

[9]The audit department in its recommendation found that Fox had billed 2,498 hours for 341 days, and was paid $86,876.25 for services in fiscal year 1994. Its recommendation was to reduce the number of hours per weekday to a maximum of eight hours for 239 days, i.e., credit for 1,912 hours, and two hours per weekend for the 51 weekends, i.e., 102 hours, for a total of 2,014 hours. The number of hours overbilled found by the audit department was 484 hours which, multiplied by the CPCS hourly rate of $35, amounted to $16,940.

[10]The manual provided in relevant part:

*"Quarter-Hour Increments*:

Attorneys are required to bill in quarter-hour increments. This means rounding off the amount of time actually spent to the nearest quarter hour. You may not automatically round up to the next quarter hour.

"For example:

"1. If you spend 10 minutes on a case, you may bill .25 hours. If you spend 20 minutes on a case, you may still bill only .25 hours.

"2. If you spend 5 minutes investigating a case, and 5 minutes interviewing a client, you may bill .25 hours for either client interview or for investigation, but not both.

"Your bills should reflect the total actual time you spent on your cases each day. You may find you cannot bill for every single item of work you

believe that his time sheets may also be kept in quarter hour intervals.[11] A careful reading of the provisions indicates that time sheets are to reflect actual time spent. Although bills to CPCS must be submitted in standard increments, the amount billed should be based on, and not exceed, the total actual time spent by the attorney in providing service to CPCS clients. We do not rely on such careful reading. The hearing officer found specifically that Fox was aware of the CPCS interpretation, and that the issue in the previous audit was that his time was computed in standard increments, rather than actual time spent. That finding is supported by the record.[12]

The inference is also warranted that it is unrealistic for an attorney to have ninety-six per cent of his telephone calls and conferences be always fifteen minutes in length and, in the absence of supporting documentation to prove otherwise, that

performed, since the quarter-hour increments would improperly inflate your billable hours.

"*Time Records*:

"Attorneys are expected to maintain case files containing, among other things, contemporaneous time records for each of their cases, separate from their bills. These records should include a daily log or diary which records how much time the attorney spent working that day, where the attorney was, what clients s/he represented, and what services s/he performed.

"Attorneys should cross-reference their cases, so that on any given day, their bills for several clients will total the actual amount of time they spent working on cases that day."

[11]Indeed, at oral argument, the panel indicated that the provisions were confusing.

[12](a) The hearing examiner asked counsel for Fox at the hearing (the same counsel represents him on appeal):

"Does Mr. Fox understand that he must . . . bill for only that time that [he] actually spend[s] in any one day working on cases?"

Counsel: "Correct. And that's what he has done."

Hearing examiner: "And is he saying, therefore, that when he billed .25 hours for . . . the 10 days that he provided the billing information to the committee on. Does he say that since 96% of the phone calls were billed at .25, is he saying that those were actually 15 minute phone calls?"

Counsel: "Or better."

(b) The audit department's "Disposition and Recommendation," an exhibit before the hearing examiner, states: "Attorney Fox's previous Disposition Recommendation states the following, 'Our review of the hours appearing on the time report revealed that Mr. Fox had apparently billed at least one-quarter hour for every client that he provided legal counsel for on that day. For example, on April 27, 1989, Mr. Fox billed 24.75 hours spread over 48 different clients, for an average time charge of approximately one-half hour per client. This example is representative of the types of time charges that appear

he billed on the basis of standard increments of time without considering that the amount billed should reflect the total actual time spent. Cf. *Handy* v. *Penal Insts. Commr. of Boston*, 412 Mass. 759, 768-769 (1992). In sum, the findings support the requirement of repayment and the removal of Fox from CPCS panels.

The due process claims of Fox fail for substantially the reasons that those of Lewis lack merit, as well as for additional reasons. The claim that Fox was unduly limited in time at the hearing is belied by counsel's reference at the hearing to "the last thing I want to say" and her reply of "Nothing" when asked at the end of the hearing whether she had anything to add. Fox's assertion of a lack of due process because of the denial of his request for discovery founders not only because he had access to all the documentation relied on by the audit department but also because he did not place in the record the print-out which CPCS had given him and which, CPCS asserts, informed him of all the problems. That Fox was denied the right to submit letters of commendation on his behalf did not deny him the right to rebut the disposition recommendation findings. As the Superior Court judge rightly pointed out, "a letter of commendation does not constitute 'documentation in support of his rebuttal to the Disposition Recommendation report findings.' "

In conclusion, we agree with the Superior Court that there is no basis for granting relief in the nature of certiorari. There are no errors appearing upon the face of the return, let alone "errors . . . so substantial and material that, if allowed to stand, they will result in manifest injustice to a petitioner who is without any other available remedy." *Johnson Prod., Inc.* v. *City Council of Medford*, 353 Mass. 540, 541 n.2, cert. denied, 392 U.S. 296 (1968), quoting from *Tracht* v. *County Commrs. of Worcester*, 318 Mass. 681, 686 (1945).

*Judgments affirmed.*

throughout this report."

At the 1996 hearing, counsel explained that the figure of 24.75 hours was in error because "Mr. Fox had billed a case ·on a day at 1.25 hours and it had been clerically logged into a database as 12.5 hours."

Thus, although counsel corrected the figure, Fox did not contest, and does not contest on appeal, that the prior audit involved the issue of computing time in standard increments.