# United States Court of Appeals

## For the First Circuit

No. 07-2653

DANIEL A. BATTERMAN, ESQ.,

Plaintiff, Appellant,

v.

WILLIAM J. LEAHY, ESQ.; PATRICIA A. WYNN, ESQ.;
MARGARET T. WINCHESTER, ESQ.; and WILLIAM E. SHAY, ESQ.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before
Boudin and Dyk,[*] Circuit Judges,
and Dominguez,[**] District Judge.

Daniel A. Batterman, pro se, with whom Law Offices of Daniel
A. Batterman, Robert C. Horgan and Law Offices of Robert C. Horgan
were on brief for appellant.
Sarah M. Joss, Assistant Attorney General, Trial Division,
with whom Martha Coakley, Attorney General, was on brief for
appellees.

October 15, 2008

---

[*]Of the Federal Circuit, sitting by designation.

[**]Of the District of Puerto Rico, sitting by designation.

**BOUDIN**, **Circuit Judge**.   Daniel A. Batterman, a Boston attorney, brought suit in federal district court against several individuals associated with the Committee for Public Counsel Services ("CPCS").   The district court stayed proceedings, insisting that Batterman resolve his claims, or at least his leading claim, in state court.   Batterman now appeals.   The background events are as follows.

Batterman, a sole practitioner, says that in 1998 he agreed with CPCS to represent indigent children and parents in state court juvenile or family matters and thereafter served as counsel in many CPCS care and protection cases.   CPCS is the Massachusetts state agency that administers the Massachusetts Children and Family Law Program and compensates attorneys such as Batterman who accept assignments to represent indigent parties.   See Mass. G.L. c. 211D, § 12.   Compensation for this work is fixed by CPCS' Assigned Counsel Manual, which lays out the billing and review procedures.

In August 2002, Batterman was appointed to represent two infant twins who were in the temporary custody of the Department of Social Services.   One of the children died of dehydration soon after moving to a new foster home, and Batterman represented the surviving twin in challenging the Department's placement of that twin.   A seven-week trial ensued, and Batterman submitted timesheets and billing records to CPCS for reimbursement.

To make an extremely long story short--Batterman's complaint in the district court is over 100 pages--a prolonged dispute arose over Batterman's reimbursement requests: Batterman sought to withdraw from the state proceeding involving the surviving twin on the ground that he had not been paid; CPCS made some payments to him for fiscal 2004 but denied others; and when Batterman submitted new invoices for work in the case completed in fiscal 2005, CPCS disallowed some of the requested amount and gave Batterman notice that his three biggest CPCS cases would be audited by the audit and oversight unit.

Although the CPCS announced the audit on January 7, 2005, apparently it is still not finished. Batterman claims that CPCS has de facto revoked his CPCS certification and that he has suffered grievously from CPCS's disallowances and delays. On February 20, 2007, sixteen months after receiving assurances that the audit would be completed promptly, Batterman filed the present suit against four individuals then associated with CPCS: Chief Counsel William J. Leahy; his deputy, Patricia A. Wynn; Margaret T. Winchester, Co-Director of the Children and Family Law Program; and William E. Shay, Audit Counsel.

The extremely long complaint, in the teeth of the requirement that claims be set forth concisely, Fed. R. Civ. P. 8(a), is 105 pages followed by attachments, contains nearly seventy pages of factual recitation. It sets forth twenty-four counts for

relief under state law and federal civil rights laws, and it seeks injunctive and declaratory relief, compensatory damages of over a quarter million dollars, attorneys' fees and unspecified punitive damages. It contains, as the lawyers say, everything up to and including the kitchen sink.

About half the claims purport to rest on federal constitutional law, most importantly, the due process clause of the Fourteenth Amendment. In particular, Batterman attacks a provision in the payment manual restricting reimbursable billable hours to 1800 hours in any fiscal year (or 1850 in some years). He also labels unconstitutional (1) various of the fee reductions imposed on him, (2) his supposed suspension from new CPCS appointments, (3) CPCS's failure to provide him help in the infant's case and (4) CPCS's conduct and delay in completing the audit. The state law claims range from fraud to civil conspiracy, negligence and chapter 93A, Mass. Gen. Laws ch. 93A, § 2, 11.

The defendants moved to dismiss, urging that the complaint did not meet pleading rules and asserting various substantive defects in individual counts. At a hearing on July 18, 2007, the district judge said that the case "might be resolved as a matter of state law" and implicated "matters that ought be wrestled with in the first instance by the courts of the Commonwealth." The judge then <u>sua sponte</u> invoked <u>Pullman</u>

abstention and ordered the case "administratively closed." See R.R. Comm'n of Tex. v. Pullman, 312 U.S. 496 (1941).

The court then allowed further briefing but did not alter its determination to abstain, instead giving Batterman 90 days to file a state law suit. This court granted Batterman's motion to stay the 90-day time limit pending this appeal. Batterman now assails the district court's reliance on Pullman and seeks reversal. CPCS defendants, seemingly with clenched teeth, defend the district court's decision to invoke Pullman while also making clear that they view Batterman's attack on the 1800 hour compensation limit as frivolous.

On this appeal, a threshold jurisdictional issue arises since the district court's "administrative closure" is effectively a record-keeping entry but not a formal judgment disposing of all claims under the final judgment statute. 28 U.S.C. § 1291 (2000). However, the final judgment rule is nothing if not malleable; and under Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712-15 (1996), abstention in favor of a potential state court suit while the federal action remains in limbo is a permissible basis for an immediate appeal.

That, alas, is the only easy part of the case. A kitchen-sink complaint, unless dismissed for some central jurisdictional or pleading flaw, is likely to be hard slogging, requiring that counts be worked through one by one. Here, the

district court's attention was drawn to the first count of the complaint, attacking the 1800-hour limitation; but that count is one of many and even if Pullman abstention were suitable for that count, some of the other counts in Batterman's complaint, which are substantively quite different, could not even arguably be resolved by Pullman although they might be deferred.

In all events, Pullman abstention does not apply in this case. Pullman abstention serves to "avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues." Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997). Under the doctrine, declining to exercise jurisdiction is warranted where (1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question. See Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71 (1st Cir. 2001).

Although the district court did not explicitly state that the cap was its focus or specify the nature of the state law issue that concerned it, both are fairly apparent from context. In his bench ruling, the district judge referred only to one issue, the annual cap on reimbursement, which the judge described as "a very significant matter." Batterman said that the cap was unconstitutional; the defendants seemingly took the position that

under state law there was no "property interest" that could trigger the due process clause.

Under Supreme Court precedent, whether there is a property interest turns largely on state law. See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). In all likelihood, the district court believed that a negative answer–i.e.,that no property right exists under state law--might moot the federal question of whether the hours cap violates the federal constitution. More broadly, as another comment of the district judge made clear, Batterman's federal law suit appeared to the judge to be primarily a fight about reimbursement of counsel under a state scheme and so could be best handled by state courts.

The problem with Pullman abstention here is that the lawfulness of the cap does not present a significant federal constitutional issue. There may well be a property interest under state law comprising an attorney's right to be compensated pursuant to the manual for work done under the CPCS program--although there is a possible qualification later to be noted concerning in what court relief should be sought. But the 1800 hour cap is an explicit limitation in the manual and this makes the constitutional claim hopeless.

The CPCS program is at best a commitment to compensate assigned counsel for work voluntarily undertaken on terms set forth

-7-

by the CPCS; the terms of the commitment include the explicit limitations in the manual; and any lawyer who takes on such representation--as Batterman voluntarily did--knows what to expect in terms of billing and review procedures. There is no right under state law, property or otherwise, to be paid more than the cap and so no federal constitutional issue is presented by CPCS's refusal to do so. Indeed, federal appointment practice has similar limitations.[1]

Further, there is no ambiguity with respect to state law that requires clarification. Under Massachusetts law, assigned attorneys <u>do not</u> have any entitlement to receive wages for hours billed over the annual cap on reimbursable hours. <u>See</u> <u>Machado</u> v. <u>Leahy</u>, 17 Mass. L. Rptr. 263, *8 (Mass. Super. 2004). The manual is equally explicit on this point. <u>See</u> Assigned Counsel Manual 15 (2005); Assigned Counsel Manual 5:9-10 (1999). "Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." <u>Wisconsin</u> v. <u>Constantineau</u>, 400 U.S. 433 (1971).

---

[1] A lawyer accepting indigent criminal defense work under the CJA program in federal court is limited by statute to a comparatively modest hourly rate and there is a presumptive cap on total compensation; although the number of hours can be exceeded by permission of the court, the per hour cap--which can be equally harsh in its consequences--cannot be exceeded. 18 U.S.C. § 3006A(d) (2000). <u>Cf.</u> <u>Boivin</u> v. <u>Black</u>, 225 F.3d 36, 41-46 (1st Cir. 2000) (upholding the constitutionality of the Prison Litigation Reform Act's cap on attorneys' fees).

Batterman's oversized complaint makes clear his contrary theory: that because he has an ethical duty under state law to provide zealous representation and that may require more than 1800 hours, the state has a duty to compensate him for whatever hours are required and that any contract to the contrary is unconscionable and against public policy. But every lawyer takes on compensation risks including the possibility that a court may not let him out of a case even if the client runs short of funds. See Model Rules of Prof'l Conduct R. 1.16(c); see also Machado, 17 Mass. L. Rptr. at *7 (finding no legal compulsion "where plaintiffs voluntarily subject themselves to known obligations").

The defendants, who did not propose Pullman abstention, suggest that somehow Pullman abstention can be justified with respect to the other constitutional challenges in the complaint. But their brief makes no serious effort to make out a case for abstention under Pullman by showing how clarification of a state law would avoid the need to address such challenges, nor do defendants invoke any of the other categories of abstention created by the Supreme Court. See Sevigny v. Emplrs. Ins. of Wausau, 411 F.3d 24, 26 n.2 (1st Cir. 2005).

Conceivably, the district judge or the defendants could have built an arguable case for abstention as to certain of the other counts based on Burford abstention, Burford v. Sun Oil Co., 319 U.S. 315 (1943), which permits abstention where federal law

suits would unduly disrupt specialized state administrative schemes. See Chemerinsky, Federal Jurisdiction § 12.2.3 (5th ed. 2007). For CPCS fee disputes, there is an administrative process with judicial review in state court.[2] But neither the district judge nor the defendants have invoked Burford, and the doctrine's scope and application are far from straightforward.

Finally, no single abstention doctrine, or probably any combination of them, would justify abstention for all of the counts. This is not to say that many (or any) of Batterman's counts are promising or even colorable. It is rather that, short of throwing the case out for pleading violations (which could perhaps then be remedied anyways), there is no way to avoid claim by claim analysis, at least of the federal claims.

So our remand will mean more work, if the case is not settled, but perhaps less than meets the eye. Batterman's remaining asserted federal law claims center primarily around several different and reasonably distinct concerns:

> •that various disallowances or other calculations in Batterman's reimbursement requests were wrongly decided, handled with

---

[2]A lawyer disappointed by CPCS reimbursement decisions is apparently able to seek judicial review of CPCS's conduct through an action in certiorari, see Mass. GL. ch. 249 § 4. In fact, other Massachusetts attorneys have challenged CPCS deductions as takings and due process violations. See Lewis v. Committee for Public Counsel Services, 739 N.E.2d 706 (Mass. App. Ct. 2000); Committee for Public Counsel Services v. Lookner, 716 N.E.2d 690 (Mass. App. Ct. 1999); Machado, 17 Mass. L. Rptr. at *7-*8.

procedural unfairness, and unreasonably delayed;

•that he has wrongly been excluded from taking on any new CPCS cases which he describes as a confiscation of his alleged entitlement to provide such services;

•that the audit process against him is attended by various procedural and evidentiary mis-steps and has been unreasonably delayed.

It is open to question whether the last two of these concerns give rise to any kind of constitutional or other federal law claim: it is not evident why Batterman would have any protected interest in the assignment of cases or how the delay in the auditing has aggrieved him since so far no new disallowance has apparently been adopted. Admittedly, the merits of these claims have not been briefed, but the heart of the federal claims may lie in the first of the three areas.

As to that, Batterman may well have a state-law property right to reimbursement due to him under the manual--if any is due-- which would be susceptible to federal protection. This court has said: "The right to a salary for work performed at the rate admittedly effective during the period when the work was performed is a right or property interest, a legitimate entitlement which qualifies for protection against governmental interference under the Due Process Clause of the Fifth Amendment."[3] But the extent of

---

[3]Hoffman v. City of Warwick, 909 F.2d 608, 616 (1st Cir. 1990) (quoting Foley v. Carter, 526 F.Supp. 977, 985 (D.D.C.1981). See also Jordan Hosp., Inc. v. Shalala, 276 F.3d 72, 78 (1st Cir. 2002)

this right is far from clear, and it cannot be that every calculational error or delay in payment under a state contract results in a federal constitutional violation.

Moreover, there may be another problem.  <u>Burford</u> aside, there is no automatic requirement that state remedies be exhausted for traditional civil rights claims brought under section 1983 or allied statutes.  <u>Guerro</u> v. <u>Mulhearn</u>, 498 F.2d 1249, 1252 (1st Cir. 1974).  But where property interests are at stake rather than personal liberties, something <u>like</u> an exhaustion doctrine has developed in certain circumstances--the premise being that no deprivation exists where state law provides an adequate remedy. Examples are eminent domain takings or deprivation of property in prisons.[4]

Of course, this assumes a real rather than a nominal remedy, and endless delay might, as with ordinary exhaustion, provide an escape.  <u>Cf.</u> <u>Safeway Stores</u> v. <u>Brown</u>, 138 F.2d 278, 280 (Emer. Ct. App. 2000).  But this in turn poses the question whether a supplicant might not also be required to seek mandamus from the state court to compel agency action unduly delayed.  And--

_____

(assuming, without deciding, "a legitimate property interest in receiving reimbursement payments").

[4]<u>Williamson County</u> v. <u>Hamilton Bank</u>, 473 U.S. 172, 192-96 (1985); <u>Parratt</u> v. <u>Taylor</u>, 451 U.S. 527 (1981); Chemerinsky, Federal Jurisdiction, <u>supra</u>, § 8.4, 499 ("In non-civil rights litigation, a plaintiff must exhaust state administrative remedies . . . .").

-12-

Massachusetts law may provide such a remedy. <u>Trust Insurance Company</u> v. <u>Commissioner of Insurance</u>, 724 N.E.2d 710, 714 (Mass. App. Ct. 2000). The defendants doubtless have some explaining to do as to the delay; the question is, <u>to whom</u> in the first instance?

No exhaustion or like requirement exists as to Batterman's main state-law claims but, if the federal claims were disposed of on the papers, the district court would likely decline to exercise pendent jurisdiction over the state-law claims, 28 U.S.C. § 1367 (2000). And some of the state claims or remedies sought may be vulnerable to qualified immunity defenses or, where effectively for money due properly from the state, to possible Eleventh Amendment objections. This is a case that could probably be pared rapidly down to size.

In all events, Batterman's attack on the cap is meritless and his present hope of a vast monetary recovery may well be dubious. At the same time, he may be owed something under the manual and an agency cannot easily explain why it takes years for it to decide about reimbursement for past work. Both sides ought to consider whether this case can be resolved by discussion and without further litigation.

The district court's decision abstaining on grounds of <u>Pullman</u> abstention is <u>vacated</u> and the matter <u>remanded</u> for further proceedings consistent with this decision. Each side will bear its own costs on this appeal.

It is so ordered.