# United States Court of Appeals
## For the First Circuit

No. 12-1243

IVÁN GONZÁLEZ-CANCEL; JOSÉ BARBOSA,

Plaintiffs, Appellants,

v.

PARTIDO NUEVO PROGRESISTA; COMISIÓN ESTATAL DA ELECCIONES,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

Rubén T. Nigaglioni, with whom Nigaglioni Law Offices P.S.C. was on brief, for appellants.
David C. Indiano, with whom Seth A. Erbe and Indiano & Williams, P.S.C. were on brief, for appellee Partido Nuevo Progresista.
José L. Nieto-Mingo, with whom Nieto Law Offices was on brief, for appellee Comisión Estatal de Elecciones.

October 2, 2012

**THOMPSON**, <u>Circuit Judge</u>.  Appellant Iván González-Cancel aspired to run for Governor of Puerto Rico as Partido Nuevo Progresista's ("PNP") candidate in the 2012 general election.  But when he applied for the job, PNP said he was not qualified.  Unhappy with PNP's decision, he and José Barbosa, a supporter of González-Cancel's candidacy, sued PNP and Puerto Rico's Elections Commission, the Comisión Estatal de Elecciones ("the Elections Commission") in federal court, alleging that the decision violated their constitutional rights.  Because we agree with the district court's dismissal of the complaint, we affirm.

### BACKGROUND

We begin with a brief recitation of the facts.  Because the case is before us on a grant of a motion to dismiss, we take as true all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in appellants' favor.  <u>Fothergill</u> v. <u>United States</u>, 566 F.3d 248, 251 (1st Cir. 2009).

### The Statutory Scheme

The Electoral Code of Puerto Rico for the Twenty-First Century, Act No. 78, June 1, 2011 ("the Electoral Code"), regulates Puerto Rico's election system.[1]  Pursuant to the Electoral Code, each political party determines whether a person is qualified to run for elected office as its candidate, unless he or she runs as

---

[1]Since the Electoral Code has yet to be codified, we, like the parties, refer to the relevant articles of the code as "Art. __".

an independent candidate. Art. 8.001(a). A person wishing to represent a particular political party in elected office must satisfy not only the requirements set forth by the party itself, but also those of the Elections Commission. Art. 8.001(b).[2] Political parties may disqualify a potential candidate if he or she fails to meet any of these requirements. Art. 8.008.

PNP is one of the two main political parties in Puerto Rico. Articles 79 and 4(26) of PNP's bylaws require a potential candidate to meet all of the requirements set forth in the Electoral Code. Article 79 further provides that a person is not qualified to be a PNP candidate if he or she fails to satisfy all of the requirements set forth in the "Primaries Regulation of the Party and the Candidate's Evaluation Regulation," "has been convicted of a felony or misdemeanor implicating moral depravation or dishonesty," or has "engage[d] in activities" that are immoral or unlawful.

PNP vets potential candidates through its Committee for the Evaluation of Candidates for Public Office ("the Evaluation Committee"). The Evaluation Committee, composed of five individuals appointed by PNP's president, determines whether a candidate is qualified for the position he or she seeks under the criteria set forth in PNP's bylaws and the Electoral Code.

---

[2]For example, potential candidates seeking to represent any political party must submit certain documentation and certifications to the Elections Commission. Id.

**González-Cancel Attempts to Run for Governor**

On October 1, 2011, González-Cancel, a physician and member of PNP, applied to be PNP's candidate in Puerto Rico's 2012 gubernatorial election. The Evaluation Committee reviewed his application and supporting materials, interviewed him and those with whom he worked closely, and allowed him to submit supplemental information. At the end of October, the Evaluation Committee decided that he was not qualified to run for Governor as PNP's candidate. Relying on Articles 79 and 4(26) as the basis for its decision, the Evaluation Committee pointed to (among other things) discrepancies in certain submitted financial information and complaints of sexual harassment against him that had aired publicly in addition to "certain excesses of Dr. González Cancel in his behavior with nurses and other co-workers, even in the Operating Room itself." The Electoral Code requires that a political party need only hold a primary for an elected position if two or more qualified candidates are interested in the position. Art. 8.005. By disqualifying González-Cancel, the Evaluation Committee had determined that its President and (then) incumbent Governor of Puerto Rico, Luis Fortuño, was the only qualified PNP gubernatorial candidate, thereby obviating the need to hold a primary election.

In accordance with PNP's bylaws, González-Cancel timely appealed the Evaluation Committee's decision to the PNP

Directorate, PNP's final decision-making body.  His appeal was denied.

## González-Cancel Files Suit

Article 8.007(i) of the Electoral Code provides a person in González-Cancel's position the right to challenge a political party's disqualification decision by appealing to the superior court of Puerto Rico (the Court of First Instance) within five business days after the party's final decision.  Consistent with this provision, González-Cancel sought further review of PNP's decision in superior court on the same day the PNP Directorate denied his appeal.  But he also took another step.  That very day he, together with Barbosa, also brought a 42 U.S.C. § 1983 action in federal court.  The heart of their federal complaint is that PNP's disqualification decision was arbitrary and erroneous because he (González-Cancel) met all of the requirements under PNP's bylaws and Puerto Rico law to be its potential candidate for Governor (or so they allege).  And, they add, PNP's decision violated their rights under the First, Fifth and Fourteenth Amendments to the Constitution -- namely, their right to associate with a political party, to participate in the nomination of their party's candidates for elected office, to vote in primaries and general elections, to appear on primary and general election ballots, and not to be excluded or disqualified from participating in their chosen party's electoral processes for discriminatory reasons.

-5-

On November 29, 2011, appellants moved in federal court for _Pullman_ abstention, asserting that state law imposed a choice of forum to determine controversies arising under Puerto Rico law and that, as a result, the federal court lacked jurisdiction over their claims.[3] In their motion, appellants further contended that if the superior court resolved the state law issues, the federal constitutional claims alleged in the complaint would become moot.

Then, appellants changed their position. They quickly moved to withdraw their abstention motion on the grounds that González-Cancel's case was no longer pending in superior court. González-Cancel had voluntarily dismissed that case after PNP requested that the Puerto Rico Supreme Court hear it through a certification petition. Oddly enough, appellants argued that the only means of redress was now in federal court since their five-day window to re-file their appeal in superior court had closed.

PNP and the Elections Commission subsequently moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. _See_

---

[3]_Pullman_ abstention, conceived by the Supreme Court in _Railroad Commission of Texas_ v. _Pullman Co._, 312 U.S. 496, 499-502 (1941), "is warranted where (1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." _Batterman_ v. _Leahy_, 544 F.3d 370, 373 (1st Cir. 2008). Given our ruling discussed _infra_, we need not reach whether _Pullman_ abstention supported the district court's grant of appellees' motion to dismiss.

Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6). The district court concluded that it lacked jurisdiction over appellants' claims because they did not fall within one of the few narrow exceptions required for a federal court's intervention in state or local electoral disputes. This appeal followed.

## STANDARD OF REVIEW

We review the grant of a motion to dismiss for lack of jurisdiction de novo. Fothergill, 566 F.3d at 251. We are not bound by the lower court's rationale, but may affirm the grant of dismissal on any ground supported by the record. InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003).

## DISCUSSION

Appellants' main contention is that the district court erred in dismissing their complaint for lack of jurisdiction. It goes without saying that federal courts are courts of limited subject matter jurisdiction and must have explicit authority to decide a case. Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2001). "Thus, we subject the plaintiffs' choice of a federal forum to careful scrutiny." Id.

The jurisdictional statute, 28 U.S.C. § 1343(3), provides that "district courts shall have original jurisdiction of any civil action . . . [t]o redress the deprivation, under color of State law, statute, . . . custom or usage, of any right, privilege or immunity secured by the Constitution of the United States by any

-7-

Act of Congress providing for equal rights of citizens . . . ." Because this statute mirrors the text of § 1983, federal jurisdiction will attach if a plaintiff has alleged a colorable claim under § 1983. Rosselló-González v. Calderon-Serra, 398 F.3d 1, 15 (1st Cir. 2004); Griffin v. Burns, 570 F.2d 1065, 1077 (1st Cir. 1978).

However, we do not reach whether the complaint alleges a colorable § 1983 claim. That is because the exercise of federal jurisdiction over local election disputes requires a further inquiry, arising from the principle of non-intervention. Since appellants' claim involves a local election dispute, we must determine whether federal intervention is appropriate. State or local election law matters are "for the most part a preserve that lie[] within the exclusive competence of the state courts." Bonas, 265 F.3d at 74. And we have repeatedly held that federal courts must not intervene unless one of the few narrow and well-defined exceptions applies to justify intervention. Rosselló-González, 398 F.3d at 16 (applying rule of non-intervention to an election dispute in Puerto Rico); Bonas, 265 F.3d at 74; Griffin, 570 F.2d at 1077.

One exception allows federal intervention where a discrete group of voters are denied equal protection. Bonas, 265 F.3d at 74. Appellants assert no equal protection claim and the record does not suggest one. Another exception applies where a

denial of substantive due process occurs; that is, where "the election process reaches the point of patent and fundamental unfairness." Id. Distinguishing regular electoral disputes (which do not warrant federal involvement) from those that work patent and fundamental unfairness (which make federal intervention appropriate) is often difficult. The cases that easily fit into the latter category are those involving complete disenfranchisement of voters. See, e.g., Griffin, 570 F.2d at 1078-79 (federal intervention appropriate where absentee and shut-in voters were denied their right to have their votes counted in a primary election for a city council seat); Bonas, 265 F.3d at 75-76 (federal intervention warranted where a municipality's decision not to hold a municipal election effectively disenfranchised all voters eligible to vote that year). For other cases, "there is guidance enough" in the idea "that due process is implicated where the entire election process" -- which includes a "state's administrative and judicial corrective process" -- "fails on its face to afford fundamental fairness." Griffin, 570 F.2d at 1078. This means that, as part of our due-process analysis, we must consider "whether there was a state process in place to handle the question posed by the plaintiffs, and whether the plaintiffs had availed themselves of that state process." Rosselló-González, 398 F.3d at 16; accord Bonas, 265 F.3d at 75.

Here, González-Cancel initiated a state court process in place for resolving this very dispute, but decided to abandon it. The Electoral Code provided González-Cancel the right to appeal PNP's decision -- and he did so, filing his action in Puerto Rico superior court.[4]  But he never gave any state court the opportunity to evaluate his challenges to PNP's decision since he voluntarily dismissed the case after PNP requested that the Puerto Rico Supreme Court hear the parties' dispute through a certification petition.

Appellants attempt to explain this away, stating that González-Cancel would not have been able to present evidence or develop a full record before the Puerto Rico Supreme Court.  But their explanation is as perplexing as it is meritless.  At the time González-Cancel dismissed his case in superior court, the Puerto Rico Supreme Court had not yet decided whether to grant PNP's petition for certification.  And even if the Puerto Rico Supreme Court decided to hear the case (which appellants agree it had the authority to do), appellants concede that it could have remanded the case to the superior court for fact finding or appointed a special master for similar purposes, thereby alleviating their concerns.[5]  Where, as here, a plaintiff is aware of, yet fails to

---

[4]The same day, he filed this case in federal court and, in moving for <u>Pullman</u> abstention, acknowledged that if the local courts ruled in González-Cancel's favor, the federal claims would be moot.

[5]<u>See</u> P.R. Laws Ann. tit. 32, App. III, Rule 41.2 ("The Supreme Court may refer a matter to a master in any case or proceeding.");

-10-

fully use, an adequate state administrative or judicial process to address a local election dispute, a claim that the election process created fundamental unfairness to warrant federal intervention cannot survive. See Rosselló-González, 398 F.3d at 16; Griffin, 570 F.2d at 1077 (noting that "even claims of official misconduct[] do not usually rise to the level of constitutional violations where adequate state corrective procedures exist").[6]

Appellants press yet another argument as to why fundamental unfairness abounds here: Fortuño had appointed the Evaluation Committee members who, as his allies, disqualified González-Cancel to ensure Fortuño faced no primary challenger in running for Governor as PNP's candidate. Be that as it may, it does not change our conclusion. Appellants had the opportunity to raise this concern in state court, but they chose not to. Accordingly, we see no fundamental unfairness.

---

id., Rule 41.3 ("The order of reference . . . may direct [the master] . . . to receive and report evidence," and "he may require the production before him of evidence," plus "rule upon the admissibility of evidence unless otherwise directed by the order of reference, and shall have the authority to put witnesses on oath and may himself examine them and may call the parties to the action and examine them upon oath.").

[6]Appellants do not argue that the requirement, as set forth by the Electoral Code, that they file suit in Puerto Rico superior court for resolving such disputes is an inadequate or unfair means of redress.

## CONCLUSION

For all these reasons, we **<u>affirm</u>** the district court's decision not to intervene in the election dispute.