# United States Court of Appeals

## For the First Circuit

No. 16-1319

FRANCISCO JOSÉ MASSÓ-TORRELLAS; CONJUGAL PARTNERSHIP MASSÓ-
ESTÉVEZ; JOSÉ FRANCISCO MASSÓ-TORRELLAS; CONJUGAL PARTNERSHIP
MASSÓ-MALDONADO; OSSAM CONSTRUCTION, INC.,

Plaintiffs, Appellants,

v.

MUNICIPALITY OF TOA ALTA; CLEMENTE AGOSTO-LUGARDO, in his
official capacity as Mayor of the Municipality of Toa Alta and
in his individual capacity; YARITZA ROSARIO-SOTO; CONJUGAL
PARTNERSHIP AGOSTO-ROSARIO,

Defendants, Appellees,

INDETERMINED NUMBER OF UNNAMED MUNICIPAL POLICE OFFICERS;
INDETERMINED NUMBER OF JANE DOES; CONJUGAL PARTNERSHIP; RICHARD
DOE; JOHN DOE; ABC INSURANCE COMPANY,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

---

Before

Howard, Chief Judge,
Torruella and Dyk,* Circuit Judges.

---

Roberto Busó-Aboy, for appellants.

---

* Of the Federal Circuit, sitting by designation.

Eduardo A. Vera Ramírez, with whom Landrón Vera, LLC., Eileen Landron Guardiola, and Luis A. Rodríguez Muñoz were on brief for appellees Municipality of Toa Alta and Clemente Agosto-Lugardo, in his official capacity as Mayor.

Margarita Mercado-Echegaray, Solicitor General, with whom Susana I. Peñagarícano-Brown, Assistant Solicitor General, was on brief for appellee Clemente Agosto-Lugardo, in his individual capacity.

January 9, 2017

**DYK**, **Circuit Judge**. Plaintiffs appeal from a district court order dismissing their 42 U.S.C. § 1983 claim for lack of subject matter jurisdiction, and declining to exercise supplemental jurisdiction over related state law claims. We affirm the district court's dismissal. The district court found that it lacked subject matter jurisdiction because the parties had failed to comply with the mediation/arbitration clause in their contract. Although we conclude that the district court erred by holding that the mediation/arbitration clause applied to the § 1983 claim, we conclude that the § 1983 claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Accordingly, there is also no supplemental jurisdiction over the state law claims.

**I.**

This dispute relates to contracts for the construction of a municipal transportation terminal. On May 7, 2010, defendant, the Municipality of Toa Alta ("Municipality"), awarded a construction project to plaintiff, OSSAM Construction Inc. ("OSSAM"), to build the terminal on land owned by the Municipality. The parties contemplated that the construction project would be undertaken in two phases, with two separately executed contracts. The Phase I contract was executed on September 10, 2010, and the work was apparently completed

without incident within the 120 days provided in the contract. The Phase II contract was executed on September 4, 2012. From September of 2014 and continuing through December of 2014, disputes arose regarding payments for the work performed in connection with the Phase II contract. On January 20, 2015, OSSAM issued a notice of default against the Municipality due to its alleged nonpayment for the completed construction work. On February 4, 2015, the Municipality notified OSSAM by letter that the contract between OSSAM and the Municipality was being terminated effective immediately "[d]ue to reasons of public policy in connection with the sound administration of [municipal] funds." JA 122. This letter was signed by Mayor Clemente Agosto-Lugardo ("Agosto") on behalf of the Municipality. On the same day, municipal officials and police officers took control of the construction site, which was on municipal property.

After taking control of the site, the Municipality initially barred OSSAM from removing any property from the construction site. The Municipality alleges that this was necessary to fully inventory the on-site property and determine the correct ownership pursuant to the contract. On February 5th and 14th, OSSAM was permitted to retrieve some of its property from the site. And on February 18th, OSSAM was finally permitted

- 4 -

access to the site to retrieve "most" of its property. Appellants allege that at the time of filing the Complaint, the Municipality still retained security barriers and fences belonging to OSSAM.

On May 4, 2015, OSSAM, its president José Francisco Massó-Torrellas and his wife Sarina Maldonado-Alfandari, and OSSAM's vice-president Francisco José Massó-Torrellas and his wife Rosa Julia Estévez-Datiz, filed a complaint in the District Court of Puerto Rico, against the Municipality, Agosto in his official capacity as mayor, Agosto and his wife Yaritza Rosario-Soto in their personal capacities, an indeterminate number of unnamed Municipality police officers and officials in their official and personal capacities, along with their spouses, and any "insurance compan[ies] that may be responsible to [the] Plaintiffs." JA 12. The plaintiffs claimed that the defendants violated 42 U.S.C. § 1983 when the defendants acted under color of law to interfere with the plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights during the construction site takeover in February of 2014. The plaintiffs also claimed that these actions constituted a breach of contract and "a violation of the Constitution and laws of the Commonwealth of Puerto Rico." JA 23.

The defendants moved to dismiss the § 1983 claim for failure to state a claim, and also argued that "OSSAM has not complied with the mandatory arbitration clause in the contract." JA 41.

The Phase II construction contract between OSSAM and the Municipality included clause 35, which we refer to as the mediation/arbitration clause. It provided that

> [i]n the event that any controversy arises from the interpretation or of any other class among the parties with respect to any matter related to this contract, it shall be previously be [sic] required that before resorting to a judicial forum for the adjudication of their rights, that the parties exhaust a mediation procedure. The Municipality and [OSSAM] will at all times attempt to resolve their claims and disputes among themselves in [good] faith and if unable to arrive at an agreement[,] they bind themselves to resolving the controversy or dispute through mediation.

JA 117-18 (emphases added). The Phase I contract included the same clause with an additional final sentence stating that "[t]he mediator's decision will be final and firm." Add. 2. This sentence was not included in the Phase II contract.[1]

The usual meaning of arbitration is that the dispute resolution is binding and final. See Fit Tech, Inc. v. Bally

---

[1] Although this final sentence was omitted in the original Spanish language contract, the certified translation of the Phase II contract erroneously contained this sentence, see JA 103, 118, when in fact, only the Phase I contract contains this sentence in the original Spanish version, see JA 55, 73. The district court correctly noted this error. Add. 2 n.4.

Total Fitness Holding Corp., 374 F.3d 1, 7 (1st Cir. 2004). Conversely, the usual meaning of mediation is that the dispute resolution is non-binding. See In re Atlantic Pipe Corp., 304 F.3d 135, 141 (1st Cir. 2002). For purposes of resolving this case, we need not decide whether clause 35 provides for non-binding mediation or binding arbitration.

Interpreting clause 35 as an arbitration clause, the district court held that "the parties must comply with the obligation to mediate their claims before pursuing claims in a judicial forum," and "dismissed for lack of subject matter jurisdiction." Add. 4, 6.

The plaintiffs appeal. We have jurisdiction under 28 U.S.C. § 1291. We review the district court's dismissal for lack of subject matter jurisdiction de novo. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). We review the district court's decision not to exercise supplemental jurisdiction over state law claims for abuse of discretion. González-De-Blasini v. Family Dept., 377 F.3d 81, 89 (1st Cir. 2004).

## II.

We first address whether the district court erred by holding that the plaintiffs' § 1983 claims must be mediated or arbitrated before pursuing judicial action.

- 7 -

Here, the parties agree that the district court erred in concluding that the mediation/arbitration clause covers constitutional claims. This agreement is consistent with the plain text of the clause, which does not bring constitutional or § 1983 claims within its scope. Quite the opposite, the mediation/arbitration clause only encompasses "matter[s] related to this contract." JA 117. "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (emphasis in original). Here, there is no agreement between the parties to arbitrate/mediate the § 1983 claim. Therefore, the district court erred by holding that clause 35 of the construction contract applied to the appellants' § 1983 claim.[2]

## III.

Even though the district court erred in dismissing for lack of jurisdiction because of the mediation/arbitration clause, "[w]e are not bound by the lower court's rationale, but may [instead] affirm the grant of dismissal on any ground supported by the record." Gonzalez-Cancel v. Partido Nuevo

---

[2] We need not decide in this case whether a contractual agreement to arbitrate § 1983 claims would be enforceable. See generally, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991); McDonald v. City of West Branch, Mich., 466 U.S. 284, 290 (1984).

Progresista, 696 F.3d 115, 118-19 (1st Cir. 2012). We conclude that the § 1983 claim is without merit and should have been dismissed for failure to state a claim.

On appeal, the plaintiffs argue several different constitutional claims, alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments. In none of these respects have the plaintiffs stated a viable claim.

First, there was no First Amendment claim pleaded in the Complaint. See JA 21. "Appellants cannot raise an argument on appeal that was not squarely and timely raised in the trial court. [L]itigants must spell out their legal theories face-up and squarely in the trial court . . . . [Otherwise,] that claim ordinarily is deemed unpreserved for purposes of appellate review." Thomas v. Rhode Island, 542 F.3d 944, 949 (1st Cir. 2008) (internal citations and quotation marks omitted).

Second, there is no plausible constitutional claim for Fourth Amendment, Fifth Amendment,[3] and Fourteenth Amendment seizure and takings with respect to the individual plaintiffs. The property allegedly seized or taken belonged to OSSAM, and not the individual plaintiffs. In their Complaint to the

---

[3] In determining the appellants' claims here, we need not decide whether Puerto Rico is a state under the Fourteenth Amendment or a federal territory under the Fifth Amendment. See Examining Board of Eng'r, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 600–01 (1976).

district court, the appellants alleged throughout that they "encountered a seizure of . . . OSSAM's property, equipment and materials," that the Municipality "ordered that OSSAM could not take any of its property, equipment or materials from" the site, that Municipality officers prevented access to "OSSAM's property and equipment," and that they were told "removal of OSSAM's equipment and property was forbidden." JA 15-16.

On appeal, the appellants repeat these allegations, claiming that "they encountered a police seizure of . . . Ossam's property, equipment and materials," that "Municipality officials, under color of law and pursuant to official authority prevented Ossam personnel to remove most of its property, equipment and materials," and that a sub-contractor's equipment was permitted to be removed "but not Ossam's property, equipment and materials." Appellant Br. 9, 11.

Therefore, with respect to the individual plaintiffs, there is no plausible Fourth Amendment, Fifth Amendment, and Fourteenth Amendment claim because no individual plaintiff's property was alleged to have been taken.[4]

---

[4] In their brief, the plaintiffs also appear to complain that the defendants engaged in "illegal detention of Plaintiffs and their employees." Appellant Br. 1, 4. However, the Complaint itself contains no allegations that the plaintiffs were actually detained. See JA 15.

Third, with respect to OSSAM's Fourth Amendment, Fifth Amendment, and Fourteenth Amendment property seizure and takings claims, we find that there is no plausible allegation in the complaint that the Municipality engaged in action which would implicate § 1983.

Insofar as OSSAM alleges a taking or seizure of its contract, or alleges that its contractual rights were violated by the termination of the contract or the detention of its property, these allegations do not state a constitutional claim. In Redondo-Borges v. U.S. Dep't of Housing, Urban Dev., 421 F.3d 1 (1st Cir. 2005), this court noted that as a general matter, "[w]e have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property. . . . To hold otherwise would run the risk of transmogrifying virtually every dispute involving an alleged breach of contract by a state or a state agency into a constitutional case." Id. at 10. This principle is well-established in other circuits as well.[5] These

---

[5] B & B Trucking, Inc. v. U.S. Postal Serv., 406 F.3d 766, 769 (6th Cir. 2005) (en banc) (holding that if the USPS abridged the plaintiffs' contract rights, "the proper recourse would be a breach-of-contract claim, not a takings claim"); Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (holding that "[t]aking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. Accordingly, remedies arise from

cases appear to rest on either of two distinct propositions. In the first category, some cases have held that not all contract rights constitute property protected by the Constitution. See, e.g., Linan-Faye Constr. Co. v. Hous. Auth. of Camden, 49 F.3d 915, 931–32 (3d Cir. 1995); Unger, 928 F.2d at 1399; Yatvin, 840 F.2d at 417. Other cases recognize that contract rights can be property for constitutional purposes, and are protected against government actions taken in the government's sovereign capacity, for example, by a statute eliminating certain contractual

the contracts themselves, rather than from the constitutional protection of private property rights."); Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1398 (3d Cir. 1991) (holding that "[i]t is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." (quoting San Bernardino Physician's Serv. Med. Grp. v. County of San Bernardino, 825 F.2d 1404, 1408 (9th Cir. 1987))); Yatvin v. Madison Metrop. Sch. Dist., 840 F.2d 412, 416 (7th Cir. 1988) (holding that "the Fifth and Fourteenth Amendments do not entitle a person to a federal remedy for every breach of contract by a state . . . . Thus, unless every breach of every public contract is to be actionable as a violation of constitutional rights, it is necessary to distinguish between mere contract rights" and constitutional property rights (internal citations and quotation marks omitted)); Monolith Portland Midwest Co. v. Reconstruction Fin. Corp., 282 F.2d 439, 447 (9th Cir. 1960) (holding that "[t]ermination of the [government] contract . . . frustrated [appellant] in obtaining anticipated profits and advantages therefrom. But, . . . [f]rustration and appropriation are essentially different things. There was here no taking of [appellant's] property which entitled the company to just compensation under the Fifth Amendment" (citation omitted)); Brasier v. United States, 223 F.2d 762, 766 (8th Cir. 1955) (holding that a termination of a government contract does not constitute "a taking of the plaintiff's property without just compensation or without due process of law").

rights. See, e.g., Cienega Gardens v. United States, 331 F.3d 1319, 1353 (Fed. Cir. 2003) (holding that the enactment of ELIHPA and LIHPRHA, which eliminated some contractual rights, in the circumstances of that case "effect[ed] a compensable taking").

A second category of cases holds that even if a private party's contract rights constitute property, the exercise of contractual rights by a governmental contracting-party does not give rise to a constitutional claim. See, e.g., B & B Trucking, 406 F.3d at 769; Hughes Commc'ns, 271 F.3d at 1070.

Indeed, the Supreme Court has repeatedly recognized that governments act in different capacities—as sovereigns and as contracting parties—and that "[t]he two characters which the government possesses as a contractor and as a sovereign cannot be . . . fused; nor can the [government] while sued in one character be made liable in damages for [its] acts done in the other."[6] Horowitz v. United States, 267 U.S. 458, 461 (1925) (quoting Jones v. United States, 1 Ct. Cl. 383, 384 (Ct. Cl. 1865)). See also Perry v. United States, 294 U.S. 330, 352

---

[6] The enactment of a statute may, of course, sometimes lead to governmental liability for breach of contract. See United States v. Winstar Corp., 518 U.S. 839, 897 (1996) (holding that the enactment of FIRREA breached certain government contracts).

(1935) ("When the [government] . . . makes contracts, it has rights and incurs responsibilities similar to those of individuals who are parties to such instruments."); <u>United States</u> v. <u>Bostwick</u>, 94 U.S. 53, 66 (1876) ("The United States, when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf.").

Here, we need not resolve the exact scope of constitutionally-protected contractual property rights, but may instead assume that OSSAM's contract rights could constitute property. But when a municipality acts in a contractual or proprietary capacity, actions such as contract termination or detention of property under the contract that would constitute a simple breach of contract when a non-governmental entity is involved do not become a constitutional violation simply because the contracting party is a municipality.[7]

---

[7] We do not suggest here that a municipality in enforcing a contract may not act under color of state law. For example, it is well-established that a municipality may be liable for employment discrimination under § 1983. <u>See, e.g.</u>, <u>Rodriguez</u> v. <u>Municipality of San Juan</u>, 659 F.3d 168, 181 (1st Cir. 2011) (holding that discrimination against a municipal employee could "trigger[] municipal liability under § 1983" through official policy or custom). However, in such instances, the municipal government is motivated by something other than contractual rights. We note that OSSAM alleges that the Municipality terminated the Phase II contract in retaliation for OSSAM's issuing a notice of default, but this is not an allegation of extra-contractual motivation.

In Monell v. Dep't of Social Services, 436 U.S. 658, 690 (1978), the Supreme Court taught that a "[l]ocal governing bod[y] . . . can be sued directly under § 1983 . . . [when it] unconstitutional[ly] implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." However, the Court went on to hold that

> the language of § 1983, read against the background of the . . . legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. . . . [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Id. at 691–94 (emphasis added). Here, the record does not contain any plausible allegations that the Municipality was acting in a sovereign capacity pursuant to any statute, ordinance, regulation, or custom when it terminated the contract and took over the construction site and temporarily detained OSSAM's property.

There is no allegation in the Complaint that the Municipality acted pursuant to a statute, ordinance, or regulation. The complaint did state that the Municipality implemented "customs and policies" which caused the plaintiffs' injuries. JA 21. There was no further development of this bare

- 15 -

assertion in the Complaint regarding any specific Municipality actions undertaken pursuant to its customs and policies. In Rosaura Building Corp. v. Municipality of Mayaguez, 778 F.3d 55 (1st Cir. 2015), this court affirmed the district court's dismissal of "claims against the municipal government under Monell, after it found that Rosaura failed to plead a scintilla of facts against that government entity . . . [about the] execution of a government's policy or custom." Id. at 61-62, 69 (citation omitted). Here, given the record, we similarly conclude that there is no sufficient allegation that the Municipality acted under color of law.

In summary, for purposes of a motion to dismiss, we conclude that the source of the Municipality's authority to secure the construction site stemmed from its proprietary capacity under the contract, and not its sovereign capacity. Because the Municipality is not alleged to have engaged in a sovereign act, there is no substantial constitutional claim that would support a cause of action pursuant to § 1983. Thus, here, the Municipality's acts of terminating the construction contract and temporarily detaining OSSAM's property do not give rise to constitutional claims cognizable under § 1983.

Finally, to the extent that OSSAM complains about its exclusion from the construction site, OSSAM had no

constitutional right to access the Municipality's construction site that would give rise to a § 1983 claim. The appellants do not dispute that the construction site is "on the property of the Municipality." Appellee Off. Br. 3. There cannot be a plausible constitutional claim that the Municipality cannot secure its own property.

**IV.**

Because there is no substantial constitutional claim, we also conclude that there is no federal jurisdiction over the plaintiffs' state law claims, as the remaining state law claims were only argued to "be allowed to proceed . . . [under] supplemental jurisdiction." Appellant Br. 33. "As a general matter, a court will decline supplemental jurisdiction if the underlying [federal] claims are dismissed before trial." 13D Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3567.3, at 429 (3d ed. 2007). Case law from this circuit supports this "general principle [that] the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal . . . of any supplemental state-law claims." González-De-Blasini, 377 F.3d at 89 (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)). Specifically, in Camelio v. American Fed., 137 F.3d 666 (1st Cir. 1998), this court held

that after the district court had dismissed a suit's federal claims for failure to state a claim, it also "should have refrained from exercising supplemental jurisdiction over [the] state law claims and remanded them to state court." Id. at 673.

We review a district court's decision not to exercise supplemental jurisdiction for abuse of discretion. González-De-Blasini, 377 F.3d at 89. We conclude that the district court did not do so in dismissing the appellants' supplemental state law claims.

**AFFIRMED**. Costs to appellees.