# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 14, 2022

Lyle W. Cayce
Clerk

No. 21-50389

Preston Hollow Capital, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Cottonwood Development Corporation; The City of Hutto,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-978

Before Higginbotham, Smith, and Ho, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

Preston Hollow Capital, L.L.C. contends that the city of Hutto and the Cottonwood Development Corporation committed an unconstitutional taking of private property when they failed to return $15 million that Preston Hollow loaned to Cottonwood for the city's benefit.

We decline this invitation to constitutionalize what amounts to nothing more than a contract dispute. "[W]hen a municipality acts in a contractual or proprietary capacity, actions such as contract termination or detention of property under the contract that would constitute a simple

breach of contract when a non-governmental entity is involved do not become a constitutional violation simply because the contracting party is a municipality." *Massó-Torrellas v. Mun. of Toa Alta*, 845 F.3d 461, 468 (1st Cir. 2017). We agree and accordingly affirm.

## I.

In April 2019, the city of Hutto announced that it would be the site of the new headquarters for Perfect Game Incorporated. It unveiled plans for a 253-acre mixed-use development in anticipation of the company's relocation. And it tasked Cottonwood, a Texas non-profit local government corporation, with facilitating the project.

Preston Hollow is a finance company that funds economic development and infrastructure projects for municipal governments and development corporations. So the city asked Preston Hollow to identify potential financing options to support the project.

In January 2020, the city, Cottonwood, and Preston Hollow reached an agreement in principle on a $35 million public finance deal. Preston Hollow and Cottonwood executed a Loan Agreement, Promissory Note, and First and Second Lien Deeds of Trust. Under the Loan Agreement, Preston Hollow was obligated to initially disburse $15 million. Preston Hollow disbursed the $15 million in two parts. It sent $12,445,038.24 to Cottonwood through an escrow agent—funds that Cottonwood used to acquire two parcels of land from the city for the project, cover the costs associated with issuance of the loan, and settle a pending lawsuit between the city and a former developer. Preston Hollow also sent $2,554,961.76 to an escrow company "to be held . . . until such time as [Cottonwood] satisfies the conditions of disbursement."

Trouble ensued. Preston Hollow alleges that, in April 2020, Cottonwood insisted that the escrowed funds be disbursed, even though it

had not yet complied with the conditions of disbursement. In Preston Hollow's view, Cottonwood's conduct made it clear that the city and Cottonwood were not going to comply with the Loan Agreement, and that Preston Hollow therefore had no choice but to assert its contractual rights, declare default, and foreclose on the secured parcels of land.

Accordingly, Preston Hollow sent Cottonwood a Notice of Default, asserting that certain conditions of the Loan Agreement had not been satisfied, and that Preston Hollow was therefore exercising its right to accelerate the Promissory Note. Preston Hollow then requested that the escrow company return the escrowed funds. Finally, Preston Hollow invoked its right to nonjudicial foreclosures on the parcels of land secured for the project, and informed Cottonwood of its intent to initiate foreclosure proceedings.

The city and Cottonwood responded with a letter from counsel outlining various reasons that the Loan Agreement, Promissory Note, and other documents cited by Preston Hollow were in fact void or voidable under state law. In response, Preston Hollow sent another written demand for the disbursed funds in May 2020. Neither Cottonwood nor the city acceded to that demand. Cottonwood's board passed a resolution stating that its arrangement with Preston Hollow was based on "a legally defective transaction."

Preston Hollow filed this action against Cottonwood and the city, asserting a single claim under 42 U.S.C. § 1983, theorizing that Defendants' refusal to return the loaned funds violated the Takings Clause. Both Cottonwood and the city moved to dismiss the complaint on the grounds that it failed to state a takings claim, and Cottonwood asserted various state law counterclaims against Preston Hollow.

The magistrate judge determined that Preston Hollow's takings claim was not facially plausible, and thus recommended that the motion to dismiss be granted for failure to state a claim. The district court agreed and dismissed the suit after declining to exercise supplemental jurisdiction over Cottonwood's state law counterclaims.

We review a district court's dismissal de novo. *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). When the alleged jurisdictional defect is that no federal question has been plausibly pled, "the factual and jurisdictional issues are completely intermeshed [and] the jurisdictional issues should be referred to the merits, for it is impossible to decide the one without the other." *McBeath v. Inter-Am. Citizens for Decency Comm.*, 374 F.2d 359, 363 (5th Cir. 1967). Because the jurisdictional question of whether Preston Hollow plausibly pled a takings claim is "completely intermeshed" with the merits of that claim, it was appropriate for the district court to resolve Defendants' motion under Rule 12(b)(6). *See M.D.C.G. v. United States*, 956 F.3d 762, 768–69 (5th Cir. 2020).

## II.

The Fifth Amendment, as incorporated against state and local governments under the Fourteenth Amendment, forbids the taking of private property for public use without just compensation. U.S. CONST. amend. V. As courts have recognized, however, "[t]aking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity." *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001). As the Supreme Court has repeatedly reminded us, "[t]he two characters which the government possesses as a contractor and as a sovereign cannot be . . . fused; nor can the [government] while sued in the one character be made liable in damages for [its] acts done in the other."

*Horowitz v. United States*, 267 U.S. 458, 461 (1925) (quoting *Jones v. United States*, 1 Ct. Cl. 383, 384 (1865)). *See also Massó-Torrellas*, 845 F.3d at 468 (collecting cases); *Braden v. Texas A & M Univ. Sys.*, 636 F.2d 90, 93 (5th Cir. 1981) ("Just as Section 1983 does not create a cause of action for every state-action tort, it does not make a federal case out of every breach of contract by a state agency.") (citations omitted).

Preston Hollow contends that the Supreme Court's recent decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), calls these principles into question. But this contention badly misreads *Knick*.

In *Knick*, the Supreme Court overruled its longstanding rule from *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). Under that rule, a takings claim was not considered ripe, and thus could not be brought in federal court, until after "a property owner [has] pursue[d] state procedures for obtaining compensation." *Knick*, 139 S. Ct. at 2173. *Knick* abolished that rule, holding instead that "'a property owner has a claim for a violation of the Takings Clause' cognizable in federal court 'as soon as a government takes his property for public use without paying for it.'" *Bay Point Props., Inc. v. Mississippi Transp. Comm'n*, 937 F.3d 454, 456 (5th Cir. 2019) (quoting *Knick*, 139 S. Ct. at 2170), *cert. denied*, 140 S. Ct. 2566 (2020).

In sum, *Knick* concerns when a takings claim becomes ripe as a procedural matter—not what constitutes a "taking" as a substantive matter.

Preston Hollow nevertheless contends that it has stated a plausible takings claim because "rights that arise independently from the contract may be brought through a takings action." In particular, Preston Hollow asserts that the property right it is seeking to vindicate—its interest in the $15 million it disbursed—somehow predated the Loan Agreement because Preston Hollow "had a pre-existing title to its own money."

No. 21-50389

But Preston Hollow exchanged that "pre-existing title" for various rights laid out in the Loan Agreement, including (1) a promissory note from Cottonwood; (2) deeds of trust on the tracts of land purchased for the project with loan funds; and (3) an indemnification agreement from Cottonwood. So Preston Hollow cannot seriously claim that "the right at issue is not governed by the terms of the parties' contract." *Allegre Villa v. United States*, 60 Fed. Cl. 11, 18 (2004). *See Massó-Torrellas*, 845 F.3d at 468.

Alternatively, Preston Hollow claims that Defendants have left it with no "viable alternative" to a takings claim under the Constitution. But even if it were true that there were no contractual or other claims under state law that Preston Hollow might have pursued against Defendants—an issue on which we of course express no position here—that does not change the fact that a government must be acting in its sovereign capacity to effect a taking. *See Hughes Commc'ns Galaxy*, 271 F.3d at 1070. The fact remains that none of the actions identified by Preston Hollow—not the letter from counsel regarding the potential invalidity of the Loan Agreement, not the various pretrial statements regarding the Loan Agreement, and not the resolution adopted by Cottonwood—qualifies as sovereign acts. *See Massó-Torrellas*, 845 F.3d at 469 (concluding there were no "plausible allegations that the Municipality was acting in a sovereign capacity" when "[t]here [wa]s no allegation in the Complaint that the Municipality acted pursuant to a statute, ordinance, or regulation" at the time "it terminated the contract . . . and temporarily detained [the plaintiff's] property").

Because all of the misconduct alleged in the complaint involves "commercial" and not "sovereign" acts, "any claim that [Preston Hollow] may have asserted should be a breach of contract claim, not a taking claim." *St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed. Cir. 2008). Of course, "a plaintiff may plead, in the alternative, both a breach of contract claim and a takings claim in the same complaint." *Century Expl.*

6

*New Orleans, Inc. v. United States*, 103 Fed. Cl. 70, 77 (2012).  But when a plaintiff brings only a takings claim, and that claim "sound[s] in contract," dismissal of the takings claim is appropriate.  *See*, *e.g.*, *Griffin Broadband Commc'ns, Inc. v. United States*, 79 Fed. Cl. 320, 323–24 (2007), *aff'd*, 287 F. App'x 108 (Fed. Cir. 2008).

Accordingly, we affirm.[1]

---

[1] We do not address what effect, if any, this dismissal might have on potential claims that are not before us.