# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 23, 2025

Lyle W. Cayce
Clerk

————————

No. 24-11025

————————

Mesquite Asset Recovery Group, L.L.C.; Verde Center Partners, L.L.C.; HQZ Partners, L.L.C.; Lang and Company, L.L.C.; MCG-124, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

City of Mesquite, Texas,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:24-CV-740

_____

Before Higginson, Willett, and Engelhardt, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Plaintiffs-Appellants (Appellants) are development groups that entered into a public improvement contract with Defendant-Appellee City of Mesquite (the City). Appellants sued the City after it purportedly refused to extend time for performance under the contract and instead terminated it, alleging a theory of inverse condemnation under both the federal and Texas constitutions, and seeking declaratory relief and attorneys' fees for breach of contract and various other state-law violations. The district court examined

the takings claim and determined Appellants failed to state a claim "because they have not sufficiently alleged that the City acted in its sovereign, rather than its commercial, capacity." The district court then dismissed Appellants' federal Declaratory Judgment Act claim and remanded the remaining state-law claims to state district court. We AFFIRM.

## I.

In 2008, Appellants purchased from the City approximately 60.31 acres of land in Mesquite, Texas (the Property), the majority of which sits on a federally designated flood zone. Appellants also applied for and received from the City a variance waiving their obligation to obtain a Conditional Letter of Map Revision (CLOMR) from the Federal Emergency Management Agency—a standard "advisory opinion or comment" from the agency assessing the effects of development on the relevant flooding source that can be both expensive and time-consuming to obtain.

In the following years, Appellants allege they spent millions of dollars developing the area for the City, including on agreed-to public improvement projects for which Appellants would be reimbursed. One such project was the development of a multi-lane vehicular bridge with a hike and bike trail across the South Mesquite Creek, which bisected the Property.

In June 2018, Appellants, the City, and the Mesquite Medical Center Management District (the Management District)—a political subdivision created to develop the Property—entered into two updated contracts: the Master Development Agreement (MDA) and a corresponding Reimbursement Agreement. In the MDA, the City acknowledged that Appellants had completed the required bridge across South Mesquite Creek at an approximate cost of $3,200,000, for which they would be reimbursed. But the MDA "automatically terminate[d] five (5) years after [its] Effective Date" unless certain conditions precedent occurred, including

No. 24-11025

that Appellants obtain all permits and pass certain inspections. And the MDA also specified that, should the contract terminate, so too would any reimbursement obligations.[1]

As the five-year automatic termination deadline approached, Appellants learned—allegedly for the first time—that the City "would not honor the variance formally granted" to Appellants and which "exempted" them from obtaining a CLOMR. The City cited as its reasoning an ordinance passed four years after Appellants were first exempted from the CLOMR requirement and that ostensibly required Appellants to obtain one. Because Appellants purportedly had no means to timely do so and otherwise complete the project, the MDA would terminate by its own terms, as would the City's obligation to reimburse Appellants.

Prior to initiating this litigation, Appellants met with the City Manager, the City Attorney, City Council members, and City staff to find a way to comply with the MDA's timing requirements and obtain the necessary permits. The City and its officials then placed the matter of an extension of the MDA's terms on the City Council agenda. The City Council voted not to alter the contractual terms. On June 29, 2023, the City notified Appellants that the MDA was terminated.

Appellants then sued the City in state court, asserting that the City's actions constituted a taking under both the federal and Texas constitutions; that the City violated the Texas Vested Rights Statute, Tex. Local Gov't Code § 245.001, *et seq.*; and that the City breached the MDA. Appellants sought "just compensation" and "damages" under the takings claim and declaratory relief and attorneys' fees under the Vested Rights Statute and

---

[1] The parties debate whether the City or Management District had reimbursement obligations under the MDA. We need not resolve the issue.

their breach-of-contract claims. Appellants also sought separate declaratory relief under the Texas Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code § 37.001, *et seq.* The City removed the action to federal court and moved to dismiss Appellants' claims for failure to state a claim and, alternatively, for lack of jurisdiction. Appellants then amended their complaint, but did not add any new claims, and the City again moved to dismiss the amended complaint.

The district court dismissed Appellants' Fifth Amendment takings claim and separate declaratory judgment claim—which it assessed, following the case's removal to federal court, under the federal Declaratory Judgment Act—and remanded the remaining state-law claims to the 191st Judicial District Court, Dallas County, Texas.

## II.

"Dismissals for failure to state a claim are reviewed de novo." *Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 714 (5th Cir. 2021). At this stage in the proceedings, the panel must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Mayfield v. Currie*, 976 F.3d 482, 485 (5th Cir. 2020). Dismissal is appropriate if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

Here, the district court appropriately assessed the takings claim in the first instance. In so doing, the district court found that Appellants had "not plausibly pleaded a federal-law takings claim because they ha[d] not

sufficiently alleged that the City acted in its sovereign, rather than its commercial, capacity."

## A.

The Fifth Amendment, as incorporated against state and local governments under the Fourteenth Amendment, forbids the taking of private property "for public use without just compensation." U.S. Const. amend. V. Where an alleged taking implicates government contracts, however, a successful takings claim is unlikely. A government acting "in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity," is treated just as any other party to a contract, and contract law remedies provide the proper recourse for any wrongdoing. *Preston Hollow Cap., L.L.C. v. Cottonwood Dev. Corp.*, 23 F.4th 550, 553 (5th Cir. 2022) (quoting *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001)). Put differently, actions "that would constitute a simple breach of contract when a non-governmental entity is involved do not become a constitutional violation simply because the contracting party is a municipality." *Id.* at 552 (quoting *Massó-Torrellas v. Mun. of Toa Alta*, 845 F.3d 461, 468 (1st Cir. 2017)).

But a plaintiff may plead both a breach-of-contract claim and a takings claim as alternative theories of recovery when challenging the same government action. *Id.* at 554 (citing *Century Expl. New Orleans, Inc. v. United States*, 103 Fed. Cl. 70, 77 (2012)). The federal courts most experienced with these types of cases—the Court of Federal Claims and the Court of Appeals for the Federal Circuit—have developed a standard process for addressing them. When a plaintiff has pleaded breach-of-contract and takings claims alternatively, a reviewing court should assess the breach-of-contract claim in the first instance, and then examine the takings claim if the breach claim falters. *See Century Expl.*, 103 Fed. Cl. at 80 (collecting cases). That practice

smartly ensures that such cases can be decided "on non-constitutional grounds when that is available," and further promotes judicial efficiency, since a party "can obtain only one recovery for a single harm." *Id.* at 82–83 (quoting *Stockton E. Water Dist. v. United States*, 583 F.3d 1344, 1369 (Fed. Cir. 2009), *on reh'g in part*, 638 F.3d 781 (Fed. Cir. 2011)); *see also Hughes Commc'ns Galaxy*, 271 F.3d at 1070 (cautioning "against commingling takings compensation and contract damages").

These principles help inform our analysis here, where Appellants have pleaded both a breach-of-contract claim and a takings claim, although seek only declaratory relief and attorneys' fees for their contract claim.[2] Since Appellants do not ask for contract damages, no financial-recovery-related efficiency drives us to examine the contract claim in the first instance. Nor does constitutional avoidance guide us to do so, as the initial steps of analysis for both claims functionally merge. Under Texas law, the primary element of a breach-of-contract claim requires determination of whether a valid contract exists. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). The takings claim requires us to first ask a similar—if not even more foundational—question: Does this case present an issue that "sounds in contract" or in sovereignty? *Preston Hollow*, 23 F.4th at 554 (cleaned up).

Seeing no reason to examine the contract claim first, like the district court, we proceed to examine the takings claim.

---

[2] The district court noted that the breach-of-contract and takings claims were not pleaded in the alternative. The two claims certainly intermingle throughout the 35-page complaint, but we do not need to rest our decision on this pleading imperfection.

No. 24-11025

## B.

To begin our assessment of the takings claim, we ask whether Appellants have adequately pleaded that the City acted in a sovereign, rather than contractual, capacity in undertaking Appellants complained-of actions. We start—and end—our takings analysis by determining Appellants have not.

Appellants' takings claim stems from the alleged "thwarting of [their] previously approved development and reimbursement rights" governed by their contracts with the City and the Management District. These interests cannot be disentangled from the underlying contractual dispute. Appellants specifically allege that the City: (1) would not "honor" Appellants' previously approved CLOMR waiver at the last minute and without sufficient time, obliging them to obtain a CLOMR; and (2) subsequently failed to alter, including by vote of the City Council, the contractual terms when it became clear Appellants could not meet the MDA's requirements. Appellants contend that these were sovereign acts. "[A]fter all," they assert, "only a governmental entity acting in its governmental or sovereign capacity can change the regulations and rules mid-stream, as the City did here."[3] Although only government entities can alter a regulatory scheme, any party to a contract may attempt—or refuse—to renegotiate the terms of an agreement midstream. In such circumstances, any resulting dispute is contractual. That conclusion does not change merely because the party is a governmental entity. *See Preston Hollow*, 23 F.4th at 552. The City declined

_____

[3] Appellants argue that "[t]he primary reason the District Court dismissed the federal takings claim was sovereign immunity." But the terms "sovereign immunity" and "immunity" do not appear in the district court's opinion. The district court instead discusses whether the City's actions were sovereign or contractual. Because sovereign immunity is not at issue in the dismissal of Appellants' takings claim, we do not discuss sovereign immunity further.

to amend the terms of the MDA, and, since Appellants couldn't meet the existing terms, Appellants lost money. This case "sounds in contract," not takings. *See id.* at 554 (cleaned up).

Appellants point to a state law inverse condemnation case—*Kopplow Development, Inc. v. City of San Antonio*, 399 S.W.3d 532 (Tex. 2013)—to suggest they have adequately pleaded a takings claim. To start, *Kopplow* is largely concerned with ripeness questions surrounding inverse condemnation claims under Texas law. *See id.* at 533. But to the extent *Kopplow* stands for the proposition that an inverse condemnation claim may result from the "thwarting of an improved development," *id.* at 540, that case is easily distinguishable from the one at hand. In *Kopplow,* the plaintiff had no contractual relationship with the city pertaining to the property. *See id.* at 534–35. The city could therefore *only* act in its sovereign capacity when it altered its flood plans that impacted the plaintiff's planned development. Here, by contrast, Appellants complain of the City's failure to modify contractual terms agreed to by Appellants.

As pleaded, the City's actions do not qualify as sovereign acts, and the district court properly dismissed Appellants' takings claim.

## IV.

Appellants also challenge the district court's dismissal of their declaratory judgment claim, which was converted to a claim under the federal Declaratory Judgment Act upon the case's removal to federal court.

"[D]istrict courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995). "Although a district court may not dismiss a request for declaratory judgment relief 'on the basis of whim or personal

disinclination,'" declaratory judgment relief may be denied for a variety of legitimate reasons, including a "pending state court proceeding in which the matters in controversy between the parties may be fully litigated." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989) (citation omitted); *see also St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994) (discussing the factors a district court may consider in dismissing a declaratory judgment action).

Here, the district court determined that the rights of the parties would be resolved by the breach-of-contract action it remanded to the state court. The "core issues" of the declaratory judgment action were "whether the parties entered into enforceable contracts and, if so, whether [the City] breached the contracts." As discussed, our cases instruct that where a concurrent state court action raises the same issues as a declaratory judgment claim, and those issues are not governed by federal law, a district court may properly decline to decide a declaratory judgment suit if it determines "the controversy is better decided" in state court. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 392–94 (5th Cir. 2003). The same logic applies here, where the district court determined the remanded state court action would ably resolve the dispute.

Appellants also argue that the district court failed to consider their non-duplicative claims under the Texas Vested Rights Statute. Again, the district court had "broad discretion" to determine whether such claims would be better decided by a state court. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

All considered, the district court did not abuse its discretion in dismissing any claims under the federal Declaratory Judgment Act.

\* \* \*

We AFFIRM.